**SOVIK et al. v. SHAUGHNESSY.**

Civ. No. 3090.

United States District Court
N. D. New York.

Jan. 31, 1950.

On Reargument July 13, 1950.

Smith, Sovik, Levine & Richardson, Smith & Sovik, Syracuse, N. Y., for plaintiffs.

Irving J. Higbee, U. S. Atty., Syracuse, N. Y., Frederic Rita, Sp. Asst. to the Atty. Gen. (Edmund Port, Syracuse, N. Y., of counsel), for defendant.

BRENNAN, Chief Judge.

Plaintiffs seek a judgment in effect directing the refund of an income tax item paid for the taxable year 1943. The terms "plaintiff" and "taxpayer" as they hereinafter appear refer to the plaintiff, Laurence Sovik.

In 1935 the law firm in which the plaintiff was a partner purchased an account receivable owned by a predecessor law partnership, which had been previously dissolved. Thereafter the amount due on said account was fixed by agreement at $100,-000, and it was agreed that the account would be paid within ten years from 1937.

In 1943 the account was paid in full and plaintiff's distributive share was reported in his income tax return for the year 1943, as a long term capital gain, and the tax computed accordingly. The Commissioner rejected the contention that the item constituted a long term capital gain and assessed the item taxable as ordinary income. It is conceded for the purpose of argument that the account receivable in the hands of the purchaser was a capital asset.

The question then presented may be concisely stated; viz.: Is an account receivable paid in full prior to the expiration of the agreed time within which payment should be made a long term capital gain within the provisions of Section 117 of the Internal Revenue Code, as amended? The answer appears to be found in the wording of Section 117(a) (4) of the Code, 26 U.S.C.A. § 117(a) (4), which requires the sale or exchange of a capital asset in order that the gain come within the definition of a long term capital gain. Here, there was no sale or exchange of the account receivable by the partnership of which the taxpayer was a member. The account was held and eventually paid in full. There would seem to be no valid distinction between the redemption of bonds before maturity and the payment by the creditor of his financial obligation prior to the date when payment could have been enforced. Fairbanks v. United States, 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855; Lee v. Commissioner of Internal Revenue, 7 Cir., 119 F.2d 946; Bingham v. Commissioner of Internal Revenue, 2 Cir., 105 F.2d 971.

## Findings of Fact.

1. The facts as they appear in the stipulation and in the allegations of the complaint as admitted in the answer are adopted as the findings of fact here.

## Conclusions of Law.

1. The Court has jurisdiction in this action.

2. The complaint is dismissed.

## On Reargument.

This case was reargued to afford the plaintiffs the opportunity to raise a new legal contention which was neither urged nor passed upon in the decision of January 31, 1950.

The controversy involves the taxation of a single item of the taxpayer's income reported in the taxable year 1943. The original decision rejected the taxpayer's claim that the item constituted a long-term capital gain, and sustained the Commissioner's determination that the item constituted ordinary income and was taxable as such. Upon reargument the taxpayer takes the position that the item in question represents the total compensation received by him in one taxable year for personal services covering a period in excess of thirty-six calendar months, and that he is, therefore, entitled to the benefit of the provisions of Section 107(a) of the Revenue Act as it existed in 1943, as to such item.

The above position is, of course, inconsistent with the claim that the item constituted a long-term capital gain, and it is apparent that the complaint herein was based upon the long-term capital gain theory. It does not appear that the Commissioner in any manner passed upon the present contention, or that it was in fact urged in the proceedings before him. The stipulation, however, contains a copy of the claim for refund, and taxpayer's contention upon this reargument was raised therein. No question is raised as to the sufficiency of the complaint or as to any deficiency in the prior proceedings, so that the present contention will be determined upon its merits.

The background of facts pertinent to the decision will be briefly referred to.

The taxpayer was a special partner in a law firm which represented the executors of the estate of Daniel M. Edwards, deceased, from May 27, 1929 until June 13, 1932. As such special partner, the taxpayer had no interest in any accounts receivable or other assets of the firm at any time; his interest being confined solely to a weekly cash payment for services,

plus an annual percentage of the net cash income of the firm. His interest was confined to a percentage of actual cash received for services during each year. In June, 1932, the firm was dissolved due to the bankruptcy of one of the partners. The same parties immediately organized a second firm in which the taxpayer had the same interests as above mentioned. The second firm continued from June 13, 1932 to November 16, 1934, when same was dissolved because of the death of one of the partners. On January 2, 1935, the third firm was formed by a written partnership arrangement, the details of which are unnecessary for this decision. It is sufficient to say that the taxpayer became a general partner and an owner of a percentage interest in the assets thereof. The claim of the first firm for services rendered to the Edwards Estate as above mentioned remained its property until June 27, 1935, when such claim, together with other uncollected accounts and some articles of personal property such as office furniture, etc., were sold at public auction. The exact amount received on account of the Edwards Estate claim is not determinable from the stipulation, which shows that all uncollected accounts, including the claim against the Edwards Estate, were sold for the sum of $21,248.25. The third firm was the purchaser thereof. The moneys received from the sale of the assets of the first firm mentioned above were distributed as follows: one-third to the trustee of the estate of the bankrupt partner, one-third to the executors of the estate of the deceased partner, and the remaining one-third to the surviving partner. On October 16, 1937 by a written agreement the claim for services rendered by the first firm to the Edwards Estate and purchased and held by the members of the third firm was fixed at $100,000, to be paid within ten years as provided therein. The full amount of the claim, to-wit, $100,000, was paid in cash to the third firm on December 30, 1943, and the taxpayer's distributive share was reported in his income tax return for that year as an item of capital gain. As above indicated, the Commissioner rejected the taxpayer's contention, included the item as ordinary taxable income, assessed a deficiency tax which was later paid, and this action was subsequently brought after the usual administrative proceedings.

The question here is: May the taxpayer allocate his proportionate share of the claim as paid, over the period from May 27, 1929, to June 13, 1932, upon the theory that same represents a total payment for personal services received in one taxable year by an individual or a partnership, as provided in Section 107(a) of the Internal Revenue Code?

Neither party cites judicial precedents which may be considered in point. The plaintiff relies upon a series of cases which are typified by the recent decisions of the Tax Court in Re Enersen, — T.C. —, decided January 26, 1950, and In re Marshall, 14 T.C. 90, which hold in substance that a taxpayer member of a legal partnership with an interest in the proceeds of accounts receivable may, under appropriate circumstances, obtain the benefit of the provisions of Section 107(a), even though he was not a member of the partnership at the time the services were rendered. The defendant is content with the factual argument that Section 107(a) has no application here, since the taxpayer had no interest in the accounts receivable under the terms of the first firm partnership and his only interest was obtained as a result of the purchase of the claim by the third firm.

That the statute is remedial and that the purpose thereof is to relieve the taxpayer against the inequity of taxing in one year the fruits of several years of service is plain and needs the citation of no judicial precedent for its authority. It creates an exemption, however, and as such is subject to close scrutiny. Smart v. Commissioner of Internal Revenue, 2 Cir., 152 F.2d 333, certiorari denied 327 U.S. 804, 66 S.Ct. 962, 90 L.Ed. 1028. Applying these principles to the instant case would seem to require that the benefits of Section 107 were intended to be available

to persons performing the services and entitled to their fruits. The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid. Helvering v. Horst, 311 U.S. 112, at page 119, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655. Applying that purpose here, the right to receive the income created by services rendered to the Edwards Estate, as herein described, was created by the members of the first firm, and is taxable to them. The fact that they have made use of their power to dispose of this claim does not eliminate their burden of taxation. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Horst, supra. It would seem to be a corollary to the last statement that the exemption created by the statute still remains for the benefit of the person to be taxed and is not transferred to the purchaser. The taxpayer cites no authority which even remotely holds that the power to tax is to be applied as to the seller and the exemption afforded to the purchaser.

The proceeds of the sale of the Edwards account receivable in 1937 were treated as income to the members of the first firm and actually distributed to them or their representatives in accordance with the agreement of partnership. This would seem to be in accordance with the requirements of law. 26 U.S.C.A. §§ 22, 182, 183. The statute under discussion was not enacted at that time. The purchase of the account receivable by members of the third firm did not involve the transfer of assets from one partnership to its successor, and cases involving such a condition are not applicable here. The first firm had ceased to exist. It was dissolved. Its assets were being liquidated. The fact that some members of the third firm had also been members of the first firm does not alter the situation. The third firm was for taxation purposes a separate and distinct entity. The sale was an arms-length transaction to be appraised in the same manner as if the parties were entire strangers.

If the taxpayer should prevail here, accounts receivable, representing the value of personal services, could be sold, and both the seller and the purchaser to whom the account was ultimately paid would be entitled to the benefits of Section 107. Such multiple application of a single exemption is not justified by the wording of the section or by any cited precedent, and would be contrary to the purpose and spirit of the law. The Court can see no distinction between the purchase by a legal partnership of stocks or securities and the purchase by the third firm of the financial obligation of the Edwards Estate in the form of an account receivable.

"Common sense interpretation is the safest rule to follow in the administration of income tax laws." Rhodes v. Commissioner of Internal Revenue, 6 Cir., 100 F. 2d 966, at page 969.

The Court has not overlooked the cases cited by the taxpayer, but they are not authorities for his contention here. They do not involve the purchase and sale of a financial item produced by personal service. It is true that it is stated therein that the application of the statute depends upon the status of the recipient of the income in the year of its receipt, rather than upon the identity of the individual who contributed the services. These statements are made, however, in connection with the consideration of the status of partnership income where the personnel of the partners has changed between the time the services were performed and payment was made. The Court is impressed that the practicalities of the situation are deciding factors in the determination of the cases cited. No such conditions exist in the instant case.

The Court finds no room for the application of Section 107(a) to the facts in this case. The prior decision stands as the decision herein.