LANGER'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 12456.

United States Court of Appeals Ninth Circuit.

July 14, 1950.

Dana Latham, Austin H. Peck, Jr., and Henry Diehl, all of Los Angeles, Cal., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Edward J. P. Zimmerman and Carlton Fox, Spc. Asst. Attys. Gen., for respondent.

Before MATHEWS, ORR and LINDLEY,* Circuit Judges.

* Judge of the Seventh Circuit, sitting with the Ninth Circuit by special designation.

LINDLEY, Circuit Judge.

R. L. Langer, now deceased, and C. A. Lindsey were, during the period in question, officers and employees of Commodore Hotel Co., Ltd., a California corporation. Although claiming to be entitled by corporate action to compensation of $600 per month each, neither received any salary during the years from 1938 through 1942. In each of those periods, through 1941, Commodore suffered operating losses, its balance sheets showing continuing deficits. Throughout the period, the corporation's hotel building, fixtures and furnishings were subject to a deed of trust and chattel mortgage securing a promissory note payable to Pacific Mutual Life Insurance Co., on which Commodore was chronically in default. However, in January, 1943, Commodore, having in 1942 for the first time for a number of years, realized operating profits after making the required installment payments on its indebtedness to Pacific, had become financially able to resume payment of salaries to Langer and Lindsey; and, in January, 1944, the board of directors ordered payment of the accrued back salaries as rapidly as the corporation's financial condition would warrant. Pursuant to this action, Langer and Lindsey each received, in addition to current salaries, $10,000 in 1944 and $11,500 in 1945.

In their tax returns for 1944, Langer and wife and Lindsey and wife each reported $5000 as his or her community share of the $10,000 paid each husband during the year and computed the tax thereon at the rates applicable to the years for which the salary was paid, claiming the benefits of Section 107(d) of the Internal Revenue Code, 26 U.S.C.A. § 107(d). Lindsey and wife followed the same pattern in filing their 1945 returns. The Commissioner, however, holding that Section 107(d) was not applicable, determined tax deficiencies for the years 1944 and 1945. The Tax Court sustained the Commissioner, holding that Commodore's failure to pay Langer and Lindsey their authorized salaries in the years 1938 through 1942 was the consequence of a restraint voluntarily imposed upon itself, and not the result of a legally enforceable restriction such as the court

thought essential to bring the case within the orbit of Section 107(d).

Section 107(d) (1) of the Internal Revenue Code provides that "If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 per centum of the gross income of the individual for such year, the * * * back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable * * *." In section 107(d) (2), "back pay" is defined as "remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events; (i) bankruptcy or receivership of the employer; * * * or (iv) any other event determined to be similar in nature under regulations prescribed by the Commissioner * * *." The Regulations (Treasury Regs. 111, Section 29.107-3), in turn, provide that: "An event will be considered similar in nature to those events specified in section 107(d) (2) (A) (i), (ii), and (iii) only if the circumstances are unusual, if they are of the type specified therein, if they operate to defer payment of the remuneration for the services performed, and if payment, except for such circumstances, would have been made prior to the taxable year in which received or accrued. For the purposes of this section the term 'back pay' does not include * * * additional compensation for past services where there was no prior agreement or legal obligation to pay for such additional compensation * * *."

The Tax Court found that from 1933 until 1942 the corporation "each year sustained operating losses, which reached a maximum of $14,724.74 in 1939"; that the continually recurring deficits reached "a maximum of $63,867.39 in 1941"; that the mortgage indebtedness of $241,581, pay-

able in monthly installments, secured by lien on all assets, was "delinquent in the payment of interest" in the amount of $13,419; that, in addition, the mortgagee had advanced moneys for payment of taxes on the debtor's property; that upon an agreement made January 16, 1937, whereby the corporation had promised to pay the then accumulated balance of indebtedness of $255,000 in monthly installments, beginning at $500 and increasing to $1250, the debtor had defaulted; that the mortgagee "refrained from foreclosing * * * because its officers felt that the corporation's properties were being capably and honestly handled, and that Langer and Lindsey would ultimately work out their difficulties"; that "very cogent reasons deterred the corporation from paying its officers any salary during the period of financial distress"; that the mortgagee "was in a position to foreclose on the hotel and furnishings at any time"; that "it forebore to do so" and even aided the debtor by advancing additional money for its taxes "in substantial amounts," and that by deferring payments of salaries the debtor and its officers displayed a "prudence clearly indicated as necessary by existing circumstances."

Under these findings, it is quite clear to us that the event which operated to defer the payment of the salaries of Langer and Lindsey was an event similar in nature to bankruptcy or receivership, for Commodore, during the years in question, was admittedly insolvent and was operating only at the sufferance of Pacific, which was, at all times, in a position to foreclose its deed of trust and mortgage on the hotel and its furnishings and, in fact, refrained from doing so inasmuch as it appeared that all available revenues were being applied by Commodore toward the payment of its indebtedness to Pacific rather than toward the payment of salaries to the corporate officers. If the situation in which Commodore found itself was not one similar to "bankruptcy or receivership" within the meaning of the Code, Section 107(d)(2), and the Regulations (Treasury Reg. 111, Section 29.107-3), then those statutory words have no meaning, for the only

element of legal bankruptcy lacking was a formal judicial declaration,—a determination which the corporation or its creditors could have procured at any time,—and it is obvious that to require such an official determination would be equivalent to saying that the only event similar to bankruptcy is bankruptcy itself.

The Tax Court, however, concluded that, in order to satisfy the requirements of Section 107(d) of the Code, the deferment of payment must have been not merely absolutely necessary as a matter of fact, as it really was, but also absolutely mandatory as a matter of law—i. e., the result of a legally enforceable restraint vested in someone other than Commodore or its officers. We think this conclusion has no foundation in the language of the statute or in that of the applicable Treasury Regulations. Nor is it required by the decision in Kenny V. Commissioner, 4 T.C. 750, upon which the Tax Court relied. In that case, a creditor had inserted in a loan agreement a requirement that the corporate borrower, which, it appears, was solvent at the time, should not pay a certain corporate officer a salary in excess of a named sum, which sum was less than his authorized salary. When the corporation, having paid its indebtedness, subsequently paid the officer the difference, the Tax Court held the sum to be "back pay" under Section 107(d), reasoning that the salary restrictions dictated by the creditor were similar to the restrictions imposed upon a receiver. There is nothing in the decision impelling the conclusion that insolvency, as exemplified in the instant case, is not, for the purposes of Section 107, an event similar in nature to bankruptcy; on the contrary, we think it clear that the events which operated to defer the payment of the salaries of Langer and Lindsey constituted much more clearly an event similar in nature to bankruptcy or receivership than was that on which the court relied in the Kenny case.

In view of its conclusion that Section 107 did not apply, the Tax Court did not reach the contention that the taxpayers had not shown that they have complied with the conditions provided in that section. Con-

sequently, the judgment is reversed and remanded to the Tax Court with directions to proceed in accord with this opinion and to dispose of other issues presented on the record.