**DINGWALL**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**No. 168, Docket 22921.**

United States Court of Appeals, Second Circuit.

Argued March 11, 1954.

Decided April 5, 1954.

**922**

Seymour Barash, Brooklyn, N. Y., for appellant.

H. Brian Holland, Ellis N. Slack, George F. Lynch, Howard P. Locke, Washington, D. C., for respondent.

Before CLARK, MEDINA and HARLAN, Circuit Judges.

MEDINA, Circuit Judge.

The question before us is a narrow one. Was the sum of $10,648.65, paid to petitioner in 1947 by Owens-Illinois Glass Company, "back pay," attributable to services performed by petitioner in 1944, 1945 and 1946, which would have been paid in those years except for the intervention of a "dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings", or "any other event * * * similar in nature"?[1] The Treasury Regulation, after repeating the events contained in the statute, provides that "An event will be considered similar in nature to those events specified in [the statute] only if the circumstances are unusual * * *."[2]

Doctor Dingwall rendered services as a consulting scientist on a part-time basis pursuant to an oral agreement supported by a letter of June 30, 1943, which provided:

> "The fee for the services to be rendered is to be $5,000 for approximately 50% of my time and at the end of the year an accounting is to be made as to the actual time that has been spent on the problems and any adjustment that may be necessary for overtime demands to be amicably settled."

In fact, during each of the three fiscal years ending in June 1944, 1945 and 1946, pursuant to the agreement just referred to, services were rendered to his employer which consumed more than half of Doctor Dingwall's time. The matter "was discussed informally off and on over the period right up to Christmas, 1946,"[3] but the official of the company with whom the matter was discussed "kept postponing, postponing, postponing" until finally, as Doctor Dingwall testified, "it became extremely acrimonious * * * I finally decided I wasn't getting anywhere and I would start suit." Accordingly, a formal demand was made in 1947, and exact data and amounts submitted on the basis of information contained in petitioner's diaries. An attorney was employed, the amount demanded was not paid, and the attorney was authorized to commence suit; but, before the service of process, the employer paid in full.

■■ The Tax Court relied upon its own decision in Thompson v. Commissioner, 1952, 18 T.C. 742, where it was held that the employment of an attorney under similar circumstances and the pressing of demands for payment, all in good faith, did not constitute an event

---

1. 26 U.S.C. Sec. 107 (as added by Sec. 220(a) of the Revenue Act of 1939, c. 247, 53 Stat. 862, and as amended by Sec. 139(a) of the Revenue Act of 1942, c. 619, 56 Stat. 798, and by Sec. 119 of the Revenue Act of 1943, c. 63, 58 Stat. 21).

2. Treasury Regulation 111 (Sec. 29.107–3, as added by T.D. 5389, 1944 Cum. Bull. 196).

3. The Tax Court found that prior to 1947 "the problem was discussed informally off and on over a period of about two years."

"similar in nature" to "the commencement of court proceedings." But the Thompson case was reversed, and we agree with the reasoning of the Fourth Circuit, which held that the statute is remedial and should be liberally construed, and that the bona fide employment of an attorney to take appropriate steps toward the collection of the amount claimed to be due, including the making of a satisfactory settlement, was sufficiently "similar in nature" to "the commencement of court proceedings" to justify an apportionment over the years when the amounts were earned and payable. Thompson v. Commissioner, 4 Cir., 1953, 203 F.2d 820, 821. The case here is even stronger, as Doctor Dingwall had given explicit instructions to commence court proceedings. That the Congress intended the equitable benefits of this "relief" statute to depend upon the mere circumstance of the actual service of process seems highly improbable, especially in view of the other applicable terms which provide reasonable safeguards against claims for apportionment made in bad faith.

This conclusion is in harmony with that arrived at in the analogous situation where the delay in payment was caused by financial difficulties which were held to be similar to "bankruptcy or receivership," although no court proceedings seeking an adjudication of bankruptcy or the appointment of a receiver were instituted. Langer's Estate v. Commissioner, 9 Cir., 1950, 183 F.2d 758. See also Sedlack v. Commissioner, 7 Cir., 1953, 203 F.2d 825.

That the circumstances under which the payment was made in this case are "unusual" is self-evident. And it is equally clear that there was a "dispute," even though no formal demand supported by data showing the exact amount due was made until 1947.

Petitioner should have been allowed to allocate the back pay received in 1947, over the years in which it was earned, viz.: 1944, 1945 and 1946.

Reversed.