Julius C. POSNER and Eithel S. Posner, Plaintiffs,

v.

Thomas Giles KAVANAGH, Jr., Administrator, Defendant.

W. Walter SEYFARTH and Sally E. Seyfarth, Plaintiffs,

v.

Thomas Giles KAVANAGH, Jr., Administrator, Defendant.

Civ. Nos. 11108, 11109.

United States District Court
E. D. Michigan, S. D.

July 11, 1955.

Arnold W. Lungershausen, J. Henry Canfield, Detroit, Mich., for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, David W. Richter, Spec. Assts. to the Atty. Gen., Frederick W. Kaess, U. S. Atty., John L. Owen, Asst. U. S. Atty., Detroit, Mich., for defendant.

LEVIN, District Judge.

Plaintiffs, husband and wife in each of the above actions, filed suit to recover a refund of amounts paid as an income tax deficiency assessment, plaintiffs Seyfarth for the year 1945 and plaintiffs Posner for the year 1946. The factual and legal questions involved are substantially identical and the cases were, therefore, consolidated for trial. Each case concerns the applicability of the commonly designated "back pay spreadback" provision of the Internal Revenue Code, 26 U.S.C. § 107(d) (1952 Ed.); I.R.C. § 1303 (1954 Ed.), 26 U.S.C.A.

Plaintiffs, Julius C. Posner and W Walter Seyfarth, were employed in 1935 by the Guardian Depositors Corporation,

which had been formed for the purpose of completing the liquidation of the Guardian National Bank of Commerce. Some years later, during their term of employment, Mr. ZurSchmiede, the President of Guardian Depositors Corporation, made representations to Posner and Seyfarth to the effect that additional compensation might be paid to them upon completion of the program of liquidation. In accordance with two subsequent resolutions of the board of directors of the employing corporation, the first on June 22, 1944 and the second on January 25, 1945, Seyfarth received the sum of $4,800 in 1945, upon cessation of employment, and Posner received $4,140 in 1946, although his employment was not terminated until some two and one-half years later upon dissolution of the corporation.

Plaintiffs Seyfarth, in computing their income tax for the calendar year 1945, treated the payment of the $4,800 as "back pay" within the provisions of 26 U.S.C. § 107(d) (1952 Ed.); I.R.C. § 1303 (1954 Ed.) and apportioned the above amount over the period 1935 to 1945. Plaintiffs Posner similarly computed their income tax for the year 1946 in regard to the sum of $4,140 received in that year.

The pertinent provisions of the Internal Revenue Code then applicable provided as follows:

"(d) Back pay.

"(1) In general.

"If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 per centum of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under the regulations prescribed by the Commissioner with the approval of the Secretary.

"(2) Definition of back pay.

"For the purposes of this subsection, 'back pay' means (A) remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events; (i) bankruptcy or receivership of the employer; (ii) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings; (iii) if the employer is the United States, a State, a Territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration; or (iv) any other event determined to be similar in nature under regulations prescribed by the Commissioner with the approval of the Secretary * * *." 26 U.S.C. § 107(d) (1952 Ed.); I.R.C. § 1303 (1954 Ed.)

If it be assumed that the representations of Mr. ZurSchmiede constituted an "agreement or legal obligation"[1] of the employer to pay the above mentioned sums to Posner and Seyfarth, the plaintiffs must then establish to apply properly the above section in the computation of their tax, that the amounts received in the taxable year "* * * would have been paid prior to the taxable year except for the intervention of * *" one or more of the specified events enumerated in the statute. Plaintiffs assert that the provision of (2) (A) (iv),

1. Cowan v. Henslee, 6 Cir., 180 F.2d 73; Treasury Regulations 111 § 29.107-3.

above, applies to the facts of these cases and contend that the function of the corporate employer (liquidating the assets of the Guardian National Bank of Commerce) was similar in nature to the "* * * bankruptcy or receivership of the employer * * *." provided for in (2) (A) (i).

Section 29.107–3 of the Treasury Regulations 111 provides in part as follows:

"An event will be considered similar in nature to those events specified in section 107(d) (2) (A) (i) (ii) and (iii) only if the circumstances are unusual, if they are of the type specified therein, if they operate to defer payment of the remuneration for the services performed, and if payment, except for such circumstances, would have been made prior to the taxable year in which received or accrued. For the purposes of this section, the term 'back pay' does not include remuneration which is deemed to be constructively received in the taxable year or years in which the services were performed, remuneration paid in the current year in accordance with the usual practice or custom of the employer even though received in respect of services performed in a prior year or years, additional compensation for past services where there was no prior agreement or legal obligation to pay such additional compensation, or any amount which is not includible in gross income under Chapter 1 * * *."

It is my opinion that the amounts paid plaintiffs Posner and Seyfarth did not constitute "back pay" within the meaning of the statute. It may first be noted that the statute requires the "intervention" of a specified event; the causative factor for the delay or failure to pay in accordance with an existing agreement or legal obligation must be the interposition of one of the events specified in the statute.[2] The facts of the present case cannot be interpreted to fall within that specific requirement of the statute.

The employer in the present case was not in receivership nor in bankruptcy. The organizational purpose of the employer, it is true, was to liquidate a bank in the state of insolvency; but testimony in this case clearly established that from the date of first employment in 1935 until dissolution in 1949 the employing corporation had sufficient cash and assets on hand to pay the current rate of salary as far as employees were concerned, and in some instances, when the considered circumstances warranted it, to pay more than the current rate in order to secure personnel of a desired caliber. No intervening change in the financial condition of the employer during its corporate life necessitated a delay, or resulted in the failure to pay in accordance with any prior existing agreement or legal obligation. To equate the consistent corporate purpose of the employer in this case with an intervening event "similar in nature" to the bankruptcy or receivership of the employer, as contemplated by the statute, not only strains the purpose and intent but also the express words of the statute.

It may be further noted that plaintiffs claim the right to apportion the amounts received in 1945 and 1946 over the period from 1935 to the respective dates of receipt; but the representations of Mr. ZurSchmiede which are claimed to constitute an agreement or legal obligation are not asserted to have existed prior to 1942 in regard to plaintiff Posner or prior to 1937 or 1938 in regard to plaintiff Seyfarth. The single corporate purpose of the employer cannot be considered as an *intervening event* upon which the failure to meet a *prior existing* obligation is predicated. This purpose, asserted to be similar in nature to bankruptcy or receivership of the employer, preceded the agreement and did not, in

2. See Cowan v. Henslee, supra; Sedlack v. Commissioner of Internal Revenue, 7 Cir., 203 F.2d 825; Dingwall v. Commissioner of Internal Revenue, 2 Cir., 211 F.2d 921; Langer's Estate v. Commissioner of Internal Revenue, 9 Cir., 183 F.2d 758.

any sense, intervene to prevent the fulfillment of an agreement or obligation.

Finally, there is no intimation in any of the representations that the specified amounts would have been paid in prior years except for the financial condition of the employer. None of the representations contemplated a present payment "except for" the financial condition of the employer, the only statutory cause of failure to pay at an earlier date involved herein. The representations contemplated a possible subsequent reward or bonus for long service rendered in view of the approaching completion of the corporate purpose. They were made in regard to some future date and in no manner reflected or recognized an earlier existing right. The minutes of the board of directors meeting of June 22, 1944 show that Mr. ZurSchmiede " * * had always in mind rewarding such loyalty of the remaining employees at the end of our liquidation." Also, that the payment was an " * * * equitable adjustment * * * to carry these employees over their period of relocation."

In Bavis v. Commissioner of Internal Revenue, 3 Cir., 202 F.2d 843, 845, the widow and executrix of the decedent made two agreements in 1927. One was with creditors for the gradual liquidation of debts. The other was with five key employees, made to insure continuity of business operation, that upon performance of the agreement with the creditors, the five employees were to receive fifty per cent of the business. Both agreements were completed in 1946 and the applicability of the present section of the Internal Revenue Code then arose in regard to the computation of the five employees' income tax for 1946. The Court there stated.

"The statute requires that the compensation for services performed prior to the taxable year 'would have been paid prior to the taxable year except * * *'. These employees were not entitled to the additional payment for their services in any taxable year except the one when the contract between the Chidester estate and its creditors was discharged by performance. * * * But there was no extra compensation due them until the completion of that course. That was in 1946. It was not until that time that they were entitled to the extra compensation. Then they got it. It is inescapable that what they received was subject to income taxation then."

See also Wardall v. United States, 111 F.Supp. 885, 125 Ct.Cl. 128.

Judgment will be entered in accordance with this opinion.