Raymond T. ZILLMER, Plaintiff,

v.

UNITED STATES of America, Defendant.

John M. REDFORD, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 5120, 5149.

United States District Court
E. D. Wisconsin.

Aug. 12, 1955.

Zillmer & Redford, by Wm. C. Dill, Milwaukee, Wis., for plaintiffs.

Edward G. Minor, U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

These actions are before the Court for decision on stipulated facts. The actions are identical and stipulation covers both, the actions having been consolidated by order of the Court for purpose of taking testimony and stipulation having been substituted for the testimony.

The record and the stipulation show that the plaintiffs are co-partners and attorneys. On July 2, 1940, plaintiffs, together with Attorney A. J. Pellette, were employed as attorneys for the trustees of the Plankinton Building Company, it then being in reorganization in this Court under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The order for such employment was signed by the Honorable F. Ryan Duffy, then District Judge. The Plankinton Building was a very extensive rental property. Plaintiffs, as attorneys for the trustees, were required to handle all legal matters involving reorganization proceedings, and also, as attorneys for trustees, take care of all legal details in running the building such as leases and handling the various legal matters that arise in connection with the operation of a large office building. There were extended hearings, conferences and appeals. The foregoing duties required substantially all of the time of the plaintiff Redford and a substantial part of the time of the plaintiff Zillmer. Mr. Pellette also devoted much time to the matter prior to his death. After his death, the plaintiffs with a minor exception for a short period of time constituted a two-man office. Several petitions were addressed to Judge

Duffy to grant allowances to plaintiffs to lighten the financial burden of this extended employment. On September 15, 1944, Judge Duffy signed an order fixing plaintiffs' fees in the sum of $53,750, of which $22,583.33 had theretofore been received through interim allowances. The balance of $31,166.67 was paid in 1944 and 1945. Of the total amount paid, $5,041.12 went to the estate of Arthur Pellette. Neither plaintiffs performed any services whatsoever during the year 1945, and the value of services performed in 1944 was only a small fraction of the amount of compensation received by plaintiffs in that year. The compensation received by each of plaintiffs from this matter during 1944 and 1945 exceeded 15 percent of the gross incomes for each of them for said years. During the years 1940 through 1945 plaintiffs each reported for income tax purposes and paid such taxes on the sums actually received by them for those years. Because of the graduated tax scale, plaintiffs each paid for the years 1944 and 1945 income taxes of considerably more than they would have been required to pay had the total attorneys' fees been allocated to the respective years in which services were performed proportionately to the services performed in those years. Plaintiffs filed with the Collector of Internal Revenue claims for refund seeking relief under Section 107(d) of the Internal Revenue Code, 26 U.S. C.A., which claims were disallowed, and this action is brought to recover what is claimed is an overpayment because of the claims of plaintiffs that they are entitled to relief under said section.

Section 107(d) provides:

"*Back pay.*

"(1) *In general.* If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 per centum of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Commissioner with the approval of the Secretary.

"(2) *Definition of back pay.* For the purposes of this subsection, 'back pay' means (A) remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events; (i) bankruptcy or receivership of the employer; (ii) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings; (iii) if the employer is the United States, a State, a Territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration; or (iv) any other event determined to be similar in nature under regulations prescribed by the Commissioner with the approval of the Secretary; and (B) wages or salaries which are received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which constitute retroactive wage or salary increases ordered, recommended, or approved by any Federal or State agency, and made retroactive to any period prior to the taxable year; and (C) * * *."

Regulation 111 provides:

"Sec. 29.107–3. *Back pay attributable to prior taxable years.*— Section 107(d)(2) defines 'back

pay' and section 107(d) (1) limits the amount of tax resulting from the inclusion of such back pay in gross income for the year in which it is received or accrued. Back pay includes compensation, wages, salaries, pensions and retirement pay received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year but for the intervention of any one of the following events: (1) bankruptcy or receivership of the employer; (2) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings; (3) if the employer is the United States, a State, a Territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration; or (4) any other event determined to be similar in nature under these regulations. As to what constitutes bankruptcy and receivership proceedings see section 29.-274–1.

"An event will be considered similar in nature to those events specified in section 107(d) (2) (A) (i), (ii), and (iii) only if the circumstances are unusual, if they are of the type specified therein, if they operate to defer payment of the remuneration for the services performed, and if payment, except for such circumstances, would have been made prior to the taxable year in which received or accrued. For the purposes of this section the term 'back pay' does not include remuneration which is deemed to be constructively received in the taxable year or years in which the services were performed, remuneration paid in the current year in accordance with the usual practice or custom of the employer even though received in re-

spect of services performed in a prior year or years, additional compensation for past services where there was no prior agreement or legal obligation to pay such additional compensation, or any amount which is not includible in gross income under chapter 1."

"The general statutory principle is that a taxpayer on a cash basis must report his income for the year when it is received. Section 107 is a special exemption from that principle. A taxpayer who claims the benefit of that section must show that he comes squarely within the letter and spirit of the Congressional grant. Lindstrom v. Commissioner, 9 Cir., 149 F.2d 344, 346; Smart v. Commissioner, 2 Cir., 152 F.2d 333, 335." Van Hook v. United States, 7 Cir., 204 F.2d 25, 28.

"The statute is remedial in nature and should be liberally construed to give effect to its intention to protect an employee * * *." Thompson v. Commissioner, 4 Cir., 203 F.2d 820, 825.

■ While this statute is remedial and the purpose is to relieve the taxpayer against inequity, "it creates an exemption, however, and as such is subject to close scrutiny." Sovik v. Shaughnessy, D.C., 92 F.Supp. 202, 205.

■ Plaintiffs claim that their situation literally comes within Section 107 (d) (2) (A) (i). The difficulty with that contention is that bankruptcy or receivership did not intervene to prevent payment being made in the years in which the work was done. The employment was as a result of the "bankruptcy or receivership" and in connection therewith. It appears to the Court that this situation has been squarely passed upon by the Court of Claims in Wardall v. United States, 111 F.Supp. 885, 887, 125 Ct.Cl. 128. As there stated:

"The plaintiff says that a reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., is comparable to bankruptcy

or receivership, expressly mentioned in the statute, and that the deferment of his compensation was comparable to the deferment of compensation of employees of an employer who is in bankruptcy or receivership. There is nothing in the stipulation of facts to indicate that the plaintiff's compensation was deferred because of a possible insufficiency of assets to pay it. Rather, he was to be awarded a lump sum for the entire job, which it would take him some years to do, and the judge would determine at the end of the job how much it had, as a whole, been worth. If one works under an agreement that he is to be paid a specified sum, or a *quantum meruit* upon the completion of the job, the fact that he gets all of his pay in one year, though he has worked in another or other years, does not make his compensation 'back pay' within the meaning of Section 107 (d). And if in the meantime he has had a drawing account, the amount drawn to be deducted from his ultimate pay, that has no tendency to make 'back pay' of what he finally receives.

"The Chapter X proceedings had no bearing upon the plaintiff's employment, except to furnish the occasion for it. His pay was not *deferred* because the company was in reorganization, it was *earned* because the company was in reorganization. It was deferred because the judge, and, we suppose, judges generally in similar situations, do not put their final valuation upon the services of the trustee until the task has been satisfactorily completed. * * *"

I find nothing modifying or overruling that decision.

A similar result was arrived at in Cowan v. Henslee (Klein v. Henslee), D.C., 84 F.Supp. 813; affirmed 6 Cir., 180 F.2d 73.

Here there was no understanding that plaintiffs would be paid as they did their work. The very nature of the proceedings prevented the final remuneration being fixed until after the work was complete and the court could consider many things including the amount of work, the results of the work, assets available, and other factors which are considered by a court in fixing attorneys' fees and trustees' fees under such circumstances. Furthermore, it is the Court's understanding that it is the usual practice and custom that attorneys' fees under such circumstances are not fixed until the termination of the proceedings although advancements may be made from time to time as against attorneys' fees.

The Court comes to this conclusion reluctantly feeling that this is a "hardship case" and might well have been included in the relief afforded by the statute. Nevertheless, the Court feels that under the law and regulations, regardless of the inequities, plaintiffs are not legally entitled to the relief sought.

The stipulation raises a question about the receipt of certain exhibits attached thereto as evidence. In making this determination, the Court has considered all of the exhibits attached to the stipulation.

Because all the material facts are covered by the stipulation, the Court is not making findings of fact, preferring that the stipulation be used as findings of fact, it being the best evidence of the facts. The Court's conclusions of law are as set forth in this opinion.

Counsel for the defendant may prepare order for judgment in accord herewith, submitting the order to plaintiffs' counsel for approval as to form only.