J. W. HOWARD and Florence Howard, his wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 459.

United States District Court
E. D. Kentucky,
Pikeville Division.

Feb. 24, 1958.

**528**

Bert T. Combs, Howard & Francis, Prestonsburg, Ky., for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, John J. McCarthy, Jr., Attys., Dept. of Justice, Washington, D. C., Henry J. Cook, U. S. Atty., John M. Kelly, Asst. U. S. Atty., Lexington, Ky., for defendant.

## SWINFORD, District Judge.

The plaintiffs bring this action to recover federal income taxes paid for the calendar year 1950. The plaintiffs are man and wife who have filed joint income tax returns but the determination of the case rests solely upon matters involving the plaintiff, J. W. Howard, and he alone will be referred to throughout this opinion as taxpayer.

Taxpayer is an attorney at law in the State of Kentucky. On May 1, 1926, he was employed by the Elk Horn Coal Corporation at a salary of $4,000 a year to be the corporation's local attorney in the heart of its Kentucky coal fields with his office at Prestonsburg, Kentucky. The Elk Horn Coal Corporation of West Virginia is a large coal-producing company with extensive mineral holdings covering more than 175,000 acres in Kentucky and West Virginia. At the time of his employment Mr. Howard was a resident of Frankfort, Kentucky. He moved to Prestonsburg for the purpose of entering upon the duties of his employment and occupied an office on the door of which appeared the name of the corporation. There was an arrangement between him and the Elk Horn Corporation with reference to office expenses, including rent, telephone and secretary, whereby there was to be a portion of this expense paid by the respective parties.

Taxpayer not only worked for the corporation to which he gave approximately sixty per cent of his time, but also carried on an active law practice. He was at liberty to accept employment as an attorney in all matters which would not conflict with the interests of the corporation. This arrangement continued uninterruptedly until 1940.

In 1940 the Elk Horn Coal Corporation was placed in receivership in West Virginia and ancillary receivership proceedings were instituted in the Circuit Court of Letcher County, Kentucky. On August 22, 1940, the Letcher Circuit Court appointed ancillary receivers for the Elk Horn Coal Corporation and by order approved and confirmed the appointment of taxpayer as the attorney for the ancillary receivers in Kentucky. Throughout this receivership taxpayer received $325 per month with the understanding that just compensation for his services should be left open for later determination by the court. The amounts received as monthly payments were considered to be advancements to be credited on the amount ultimately allowed for his services to the ancillary receivers.

On December 27, 1946, taxpayer filed a motion before the Circuit Court of Letcher County requesting an interim allowance. The court sustained the motion and allowed the sum of $7,500 to be credited against whatever final allowance was to be made upon termination of the receivership.

On December 8, 1950, the court entered an order allowing the sum of $71,166.66 as final compensation to taxpayer as attorney for the ancillary receivers. The interim allowance of $7,500 was reported in taxpayer's income tax return and spread back over a period of 75 months under the provisions of Sec. 107(d) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 107(d). It should be stated that the receivership was lifted and the corporation continued to carry on its business with taxpayer in its employ on a basis similar to that prior to the receivership.

Of the $71,166.66 received as a final allowance, taxpayer included $5,833.33 of this sum in his reported income for the calendar year 1950. The remaining $65,333.33 he treated as income received in the years 1940 to 1949 inclusive and computed the tax as if the sum of $65,333.33 had been equally divided and reported as

income each year from 1940 to 1949 inclusive.

The question presented for determination is whether the final allowance of the state court in the sum of $71,166.66 received by taxpayer for services to the ancillary receivership of the Elk Horn Coal Corporation was income for the year in which it was received, to be treated as such, or subject to a "spread back" as back pay for the preceding years of the receivership pursuant to Sec. 107(d) of the Internal Revenue Code of 1939.

The defendant, through the Commissioner of Internal Revenue, disallowed the right to the spread back and taxed the entire $71,166.66 as income for the year 1950. This resulted in a deficiency assessment in the amount of $10,796.91 with interest in the sum of $2,657.67, which was paid under protest.

Before undertaking to apply the rules of law to the facts in this case it might be well to consider the whole relationship of taxpayer to the Elk Horn Coal Corporation. The identity of interests between this individual and the corporate entity have covered a period of more than thirty years. Mr. Howard was a young attorney in the office of a distinguished Kentucky lawyer, Judge E. C. O'Rear, at Frankfort, Kentucky. Judge O'Rear was the chief counsel for the Elk Horn Corporation whose large holdings were in Eastern Kentucky approximately two hundred miles from Frankfort. It was necessary that someone be on the ground in the center of these coal fields to act in the nature of a lawyer-manager and overseer. Mr. Howard was sent to Prestonsburg, Kentucky, which was near all the corporation's Kentucky holdings. He had never been to Prestonsburg before this time. The partial arrangements had by him and the corporation have been set out heretofore.

He has continued to work for the Elk Horn Coal Corporation from May 1, 1926, until the present time and is now in its employ.

The receivership of 1940 was not entertained by the court for the purpose of liquidating the corporation but was carried on under the supervision of the court as an operating receivership which was felt by all parties concerned to be only a temporary matter for the purpose of giving the corporation a "breathing spell" in which to effect a more secure financial status.

The ancillary receivers appointed by the state court employed, with the consent of the court, Mr. Arthur B. Koontz of West Virginia as general counsel for the ancillary receivers. Mr. Goldsmith, who was one of the ancillary receivers, testified that when he entered upon the receivership he took over the corporation and its personnel and continued to use the services of Mr. Howard as they had been used by the corporation prior to the receivership. This testimony was corroborated by the testimony of Mr. Koontz, general counsel for the receiver, and the arrangement continued throughout the receivership.

It is a familiar rule that an income tax deduction is a matter of legislative grace and a taxpayer claiming the deduction has the burden of clearly showing his right to such deduction. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607. The statutes allowing these deductions are not to be extended by implication beyond the clear import of the language used, but doubt as to the meaning of the words used is to be resolved against the government and in favor of the taxpayer. United States v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240.

The statute under which the taxpayer is seeking recovery was passed for a remedial purpose and should be liberally construed in his favor. Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018; Kimbrell's Home Furnishings v. Commissioner of Int. Rev., 4 Cir., 159 F.2d 608.

It must be recognized, without reference to authorities, that in the interpretation of tax statutes, as in all statutes, the legislative will is the all important and controlling factor; that

the intention of the legislature constitutes the law and is the guiding star in an interpretation thereof. 50 Am.Jur. Sec. 223, p. 200.

■ Notwithstanding the numerous decisions interpreting and applying the tax exemption statutes, there is one fact which must stand out clearly if courts are to be guided by the rule requiring them to conform to the legislative intention. That fact is that money earned in a given year, although not in the hand of the taxpayer until a later date, is to be considered as income for the year it was earned. The purpose is to relieve the taxpayer against the inequity of taxing in one year the fruits of several years of service. Sovik v. Shaughnessy, D.C., 92 F.Supp. 202.

26 U.S.C.A. § 107(d) (1) and (2) (Internal Revenue Code of 1939) reads as follows:

"(1) In general. If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 per centum of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Commissioner with the approval of the Secretary.

"(2) Definition of back pay. For the purposes of this subsection, 'back pay' means (A) remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events; (i) bankruptcy or receivership of the employer; (ii) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings; (iii) if the employer is the United States, a State, a Territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration; or (iv) any other event determined to be similar in nature under regulations prescribed by the Commissioner with the approval of the Secretary; and (B) wages or salaries which are received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which constitute retroactive wage or salary increases ordered, recommended, or approved by any Federal or State agency, and made retroactive to any period prior to the taxable year. * * *"

Treasury Regulation, Section 29.107–3 (as added by T.D.5389, 1944 Cum.Bul. 196, 197.) Back Pay Attributable to Prior Taxable Years, among other things, provides as follows:

"An event will be considered similar in nature to those events specified in section 107(d) (2) (A) (i), (ii), and (iii) only if the circumstances are unusual, if they are of the type specified therein, if they operate to defer payment of the remuneration for the services performed, and if payment except for such circumstances, would have been made prior to the taxable year in which received or accrued."

Taxpayer claims his right to the "spread back" or allocation by reason of the provisions of Sec. 107(d) (2) (A) (ii), (iii), (iv). His claim that he is entitled to the provisions of (iii) is not well taken or it is at least subject to serious doubt. I will not set forth my reasons for denying the claim on that

ground as I must conclude from the record that taxpayer is entitled to recover under (ii) and (iv). I am also of the opinion that he is entitled to recover under the provisions of Sec. 107(d) (2) (B).

In considering (A) (ii) and (iv) as applying to the facts in this case, the court is concerned with what was in the mind of both Mr. Howard and the court he was serving as attorney-employee for the ancillary receivers. It is a fair and reasonable deduction that the $325 per month paid to taxpayer was not to be his full compensation. This is disclosed by the fact that he took up with the receivers the question of an allowance for additional pay in 1946 which was about the half way point of the receivership. This resulted in a dispute between Mr. Howard and the receivers which was settled only by an agreement to leave it to the court to make an allowance. The court made the allowance of $7,500 to be spread back over a period of seventy-five months with the clear understanding that this was not to be considered adequate pay but only the pay which the treasury of the receivership justified at the time.

Unless this disagreement between taxpayer and the receivers is considered a dispute or something similar to a dispute, Sub-sections (ii) and (iv) become dead letters. It would be difficult to imagine a case to which these subsections could apply if the case at bar is not appropriate. It is true the dispute between the employer and employee did not result in the commencement of court proceedings. It was, nevertheless, a genuine dispute and court proceedings were unnecessary and could not have, under the circumstances, been instituted. The receivership proceedings furnished the forum in which the dispute could be adequately settled and it was to this agency that the parties applied for determination of the controversy. The motion for the allowance in a pending case involving the issues was an event similar in nature to the commencement of court proceedings. A reasonable or liberal construction of the statute can lead to no contrary conclusion. Thompson v. Commissioner, 4 Cir., 203 F.2d 820; Dingwall v. Commissioner, 2 Cir., 211 F.2d 921.

The basis of the denial of the claim was that the taxpayer was not in an employee status but merely performing professional services for the receivers of the corporation on a fixed fee basis. The evidence reflects that Mr. Howard was doing much more than an attorney. He had charge of the records, deeds of the land and property of the corporation. According to the testimony of Mr. Koontz, chief counsel for the receiver, Mr. Howard looked after the business affairs of the corporation and was acting more in the capacity of a local business agent than in a capacity as a lawyer.

It is a reasonable deduction from the record that had Mr. Howard not discharged these non-legal duties for the receivership, it would have been necessary to employ a business manager or agent to discharge the work for which taxpayer was responsible. He was on a monthly salary and was required by the terms of his employment to give his full time if need be to the business of the receivership. The statement of the receiver, Mr. Goldsmith, is uncontradicted on the fact that there was a condition and understanding of the employment that the receivers as well as taxpayer would work with the receivership and take a small amount of pay while the receivership was trying to save the properties from liquidation and at the end of the receivership or whenever during the receivership the financial condition would permit, the court would make additional allowances. It is my judgment that the allowance made in 1950 was a part of and intended to supplement the annual salary. It was understood by the receivers, their general counsel, taxpayer and the court that this allowance would be made when the trust fund justified it.

The full salary was withheld when it was due because of a shortness of funds and in order to use available cash to satisfy demanding creditors. There can

be no doubt that Mr. Howard earned this sum of money as an employee of the receivership or the state court would not have made the allowance. It is clear and uncontradicted that it was not earned in the year 1950. It was evidently in contemplation of the court that taxpayer was earning more money than he was receiving each year or the chancellor who was in charge of the receivership proceedings would have rejected a sizeable bill for services.

There is no doubt in my mind that had the financial ability of the receivership, as it progressed through the years, warranted it, Mr. Howard would have received substantial additions to his annual pay during these years and spread out over them. This is the real question and it is essentially one of fact. No other inference can logically be drawn.

The United States does not want taxes to which it is not entitled by law. It could not have asked taxpayer to pay this additional sum on an annual basis since the statute made no such provision. This "spread back" is permitted and sustained by interpretation of the law on either a liberal or narrow construction of the statute.

■ It seems to me that this law was enacted for just such a case as this. The good faith and integrity of Mr. Howard cannot be questioned. While it is true he acted as attorney for the corporation and receivership, he was in reality not an attorney in the usual sense but a subordinate who was without authority except as directed by Mr. Koontz and Mr. Goldsmith. The fine distinction drawn between the relationship of attorney and client and employer and employee or master and servant is of no consequence in determining the status of taxpayer here. He was not the attorney for the receiver in charge of the legal program of the receivership. He made no decisions except relatively minor ones. As a matter of fact, while taxpayer's dignity may suffer by the comparison, his relationship to the attorneys in charge of the litigation for the receivership may be likened to that of a claim agent for a railroad company with the attorneys in charge of important litigation in which the company is engaged. One is a policy maker and director. The other is acting at the will and on the responsibility of his superior.

Taxpayer's work and functions were necessary. They may have required some legal knowledge and professional skill in their performance but that fact alone cannot classify him as an individual, policy making attorney for the receivership. Walker v. Altmeyer, 2 Cir., 137 F.2d 531. An attorney can be an employee. Seaboard Air Line Ry. v. Continental Trust Co., C.C., 166 F. 597.

The statute is remedial in character and furnishes relief within its terms against the injustice of having to pay on a greater income than taxpayer would have had to pay if the trust, as in this case, had been sufficient to meet its obligations to taxpayer when they were due. Creditors were being paid over the years through the services performed by employees of the receivership while those preserving the estate were being denied their remuneration until a later date. The creditors undoubtedly received tax benefits by reason of the "spread" and it seems essentially unjust to penalize those who preserved the trust. Zilmer v. U. S., 7 Cir., 233 F.2d 912.

In Rhodes v. Commissioner of Internal Revenue, 6 Cir., 100 F.2d 966, 969, the court said, "common sense interpretation is the safest rule to follow in the administration of income tax laws." This salutary rule is not easy of application because courts differ as to what is "common sense" but, in my judgment, the instant case points up the dominant purpose of the revenue laws to the effect that those who earn or those who otherwise create the right to receive income are entitled to enjoy the benefits of it when paid. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Sovik v. Shaughnessy, supra.

■ To alleviate tax hardships resting on long-term workers who receive compensation upon completion of their services is the obvious purpose of the

statute. Lindstrom v. Commissioner of Internal Revenue, 9 Cir., 149 F.2d 344.

Innumerable authorities are cited by counsel for the respective parties in briefs. I have read or carefully examined all of these and have given an agonizing appraisal and re-appraisal to each of them. Various shades of meaning and interpretations have been taken and expounded by able jurists. With all respect to the authors of both the legislation and the regulations, they admit of various applications. The language used is not ambiguous but it is subject to opinion in its application and does not leave the mind of the court entirely free from doubt as to its meaning.

On April 7, 1953, the U. S. Court of Appeals for the Fourth Circuit decided the case of Thompson v. Commissioner of Internal Revenue, supra [203 F.2d 825]. In the opinion by Judge Dobie the court said, "We prefer to be disciples of the spirit rather than the letter, to be liberal rather than strictly formalistic. Qui haeret in litteris, haeret in cortice." Applying this maxim the court reversed the Tax Court of the United States, 18 T.C. 742, and adjudged a recovery for the taxpayer.

In Sedlack v. Commissioner of Internal Revenue, 203 F.2d 825, the Court of Appeals for the Seventh Circuit followed the decision in Thompson v. Commissioner, etc., supra, and sustained the position of a taxpayer.

Judges Clark, Medina and Harlan for the U. S. Court of Appeals for the Second Circuit, on April 5, 1954, decided the case of Dingwall v. Commissioner of Internal Revenue, supra, in which the position of the taxpayer was sustained.

It is reported in 26 Law Week 2284 of December 10, 1957 that the Internal Revenue Service approved the interpretation placed upon this section in Thompson v. Commissioner, supra, and Dingwall v. Commissioner, supra. In other words, it is now apparently the view of the Internal Revenue Commissioner that a liberal construction of the statute in its application to factual situations, as disclosed by the record in the case at bar, should be followed administratively.

It is the opinion of the court that the plaintiffs should recover the amounts claimed in the original complaint and subsequent pleadings.

The attorneys for the plaintiffs will prepare and submit findings of fact, conclusions of law, and judgment in conformity with this opinion.