**BAVIS v. COMMISSIONER OF INTERNAL REVENUE.**

**BELL v. COMMISSIONER OF INTERNAL REVENUE.**

**GIANGUILIO v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 10881–10883.

United States Court of Appeals Third Circuit.

Argued March 17, 1953.

Decided March 31, 1953.

Logan Morris, Philadelphia, Pa. (Thorpe Nesbit, Nesbit, Morris & Lisenby, Philadelphia, Pa., on the brief), for petitioners.

Carlton Fox, Washington, D. C. (Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

These appeals, all presenting the same legal point, bring up the question whether certain stock issued to the taxpayer is to be treated as back pay under the provisions of Section 107(d) of the Internal Revenue Code, 26 U.S.C. § 107(d).

The facts were stipulated. Those applicable to this appeal may be briefly summarized. Davitt D. Chidester died in 1927. He owned, as sole proprietor, the Chichester Chemical Company and other assets not material here. He was heavily indebted.

The net book value of the tangible assets of his Chichester Company was but $7,886.72, although the company was valued at $600,000, the difference between this valuation and the tangible assets being assigned to good will. The debts of the decedent amounted to $576,570.18.

As a means of paying the decedent's debts and keeping the business going, Elizabeth M. Chidester, widow of the decedent and executrix of the estate, made two agreements. One was with the principal creditors of the decedent. This agreement provided for liquidation of debts at $7,500 per month and for $1,000 weekly to be applied to carrying charges on real estate and taxes. In order to insure continuity in the business Mrs. Chidester made an agreement with five key employees of her late husband, three of whom are the appellants in these cases. The substance of the agreement was that these employees were to continue working in the business at the same salary they were receiving in 1927, the year of Mr. Chidester's death. At the completion of the payment of the debts of the decedent and consequent termination of the creditors' agreement, Mrs. Chidester agreed to give these employees 50 per cent of the business. The proportions for the division were stipulated, and the form in which the distribution was to be made was left to her. Prior to the completion of the agreement with the creditors Mrs. Chidester died, and an administrator d. b. n. c. t. a. replaced her. Payments to the creditors continued and the debts were cleared in 1946. Distribution was then made to the employees, pursuant to the agreement, by incorporating the business and giving each of these employees his stipulated share of corporate stock.

Out of this transaction, the legal question is whether this stock is income to the recipients in 1946 or whether it can be allocated over the years from 1927 to 1946 under the back pay provision of the statute.[1] This is a case where the language of Sec-

1. It is found as a fact that: "The fair market value of the shares of stock received by each Petitioner is in excess of 15% of the gross income of each respectively for 1946, but less than 80% of the total compensation of each for personal services covering the period from March 1, 1928 to July 1, 1946." This makes § 107(a) inapplicable to the problem here.

tion 107(d) and the applicable regulation must necessarily be quoted. 107(d)(2) provides as follows:

"(2) *Definition of back pay.* For the purposes of this subsection, 'back pay' means (A) remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events; (i) bankruptcy or receivership of the employer; * * * or (iv) any other event determined to be similar in nature under regulations prescribed by the Commissioner with the approval of the Secretary * * *."

The applicable section of the regulation (29.107–3 of Regulations 111) provides:

"An event will be considered similar in nature to those events specified in Section 107(d) (2) (A) (i), (ii) and (iii) only if the circumstances are unusual, if they are of the type specified therein, if they operate to defer payment of the remuneration for the services performed, and if payment, except for such circumstances, would have been made prior to the taxable year in which received or accrued. * * *"

The taxpayers argue that the employment agreement provided for the transfer to the key employees of an equitable interest in the business. That equitable interest, presumably, would continue to grow in value each year as the mountain of debt was eroded by the successful carrying on of the enterprise. According to this theory, then, these taxpayers were gradually adding to the value of their equity each year although they could not receive it in cash or stock because of a situation comparable to bankruptcy or receivership which prevented them from getting the money.

The difficulty about this argument is that it does not accord with either the terms of the contract or the applicable statute. The contract made between the executrix and the employees says specifically:

"6. Nothing herein contained shall be construed as giving to the parties of the third part any proprietary interest or ownership in the Company or its assets, nor shall they be in any way entitled to or liable for the profits or losses of the business until the final completion of the administration of the Estate of Davitt D. Chidester, * * *."

The statute requires that the compensation for services performed prior to the taxable year "would have been paid prior to the taxable year except * * *". These employees were not entitled to the additional payment for their services in any taxable year except the one when the contract between the Chidester estate and its creditors was discharged by performance. If the estate had not had so heavy a debt, or if the profits of the business had been even higher than they were, that termination would have come before 1946. If it had it would have given the employees their right to payment at an earlier time and the payment would have been taxable income that year. By the very terms of the agreement between the executrix and taxpayers, extra compensation was only due when a certain event happened. Their efforts were to make that happen as soon as they could. But there was no extra compensation due them until the completion of that course. That was in 1946. It was not until that time that they were entitled to the extra compensation. Then they got it. It is inescapable that what they received was subject to income taxation then.

We were pressed with the case of Langer's Estate v. Commissioner of Internal Revenue, 9 Cir., 1950, 183 F.2d 758, 759. The difference between that case and these illustrates the precise point involved here. In that case the employees of a corporation were "entitled by corporate action to compensation of $600 per month each". Because of operating losses they received no salaries. In subsequent years, when business was better, they were paid their "accrued back salaries." It was held that they were entitled to the benefit of Section 107 (d). This was quite right. They had the money coming by "corporate action" but

they could not get it because of a situation similar to bankruptcy or receivership. But the taxpayers in these cases were not entitled to anything more, under the terms of their contract, until successful completion of the agreement with Mr. Chidester's creditors. When that was done they got what they had been promised. But it was not "back pay;" it was compensation payable then and there upon the performance of the stipulated condition.

The decisions of the Tax Court will be affirmed.