*Decision will be entered under Rule 50.*

Francis T. Donahoe and Anna T. Donahoe, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 47726.    Filed September 29, 1954.

*Francis T. Donahoe, Esq.*, for the petitioners.
*George C. Lea, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge:* The parties are in agreement on the material facts. They differ on the question of whether the amount paid in 1951 constitutes "back pay" within the meaning of section 107 (d), material portions of which are set forth in the margin.[1]

---

[1] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY.

(d) BACK PAY.—

(1) IN GENERAL.—If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 per centum of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Commissioner with the approval of the Secretary.

(2) DEFINITION OF BACK PAY.—For the purposes of this subsection, "back pay" means (A) remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events: * * * (iii) if the employer is the United States, a State, a Territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration; or (iv) any other event determined to be similar in nature under regulations prescribed by the Commissioner with the approval of the Secretary; and (B) wages or salaries which are received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which constitute retroactive wage or salary increases ordered, recommended, or approved by any Federal or State agency, and made retroactive to any period prior to the taxable year; * * *.

It is stipulated that if the payment in controversy constitutes back pay under section 107, the amount exceeds 15 per cent of petitioner's gross income for 1951.

Petitioner relies on two general theories in support of his contention. One theory is that earlier payment was prevented under an agreement because of "lack of funds appropriated to pay such remuneration," and, assuming no proof of lack of funds to pay for the leave prior to separation from the service, the circumstances bring the payment under subsection (d) (2) (A) (iv) as "any other event determined to be similar in nature under regulations prescribed by the Commissioner with the approval of the Secretary." The other theory is that the leave having been paid for at a rate of salary greater than the salary rates prevailing during the years when the accumulation was made, the excess was an increase of salary "ordered, recommended, or approved by any Federal * * * agency, and made retroactive to any period prior to the taxable year." Respondent argues on brief that the lump-sum payment in question was not remuneration "which would have been paid prior to the taxable year"; that none of the statutory events intervened to prevent payment in years prior to 1951; and that payment of the amount as back pay was precluded by his regulations.

The benefits of subsection (d) (2) (A) apply only when the remuneration "would have been paid prior to the taxable year," except for one of the specified events, or an event similar in nature. It is now well settled that in order to come within the provision, there must have been an agreement or legal obligation to pay the amount during the years to which the employee desires to allocate the compensation. *Cowan* v. *Henslee*, 180 F. 2d 73, affirming 84 F. Supp. 813; *Elsie L. Sedlack*, 17 T. C. 791,[2] in which we held that section 29.107–3 of Regulations 111 so providing was a correct interpretation of the law; *Frank R. Bavis*, 18 T. C. 418, affd. 202 F. 2d 843.

Subsection (d) was added to section 107 of the 1939 Code by the committee of conference. The House conference report contains a statement that

The term [back pay] refers only to remuneration, the payment of which has been deferred by reason of the unusual circumstances of the type specified in the definition. [H. Rept. No. 1079, 78th Cong., 2d Sess. (1944), p. 45.]

In *Thompson* v. *Commissioner*, 203 F. 2d 820, the court said, in speaking of the statute involved here:

[2] Reversed on appeal, *Sedlack* v. *Commissioner*, 203 F. 2d 825, upon the ground that the payments were made as the result of a prior agreement, contrary to a conclusion of this Court. In reaching its conclusion the Court of Appeals remarked that "The treasury regulation precludes back pay for past services in the absence of a 'prior agreement or legal obligation'." Having found that the payments were made as the result of a prior agreement, the court said that it was "of no consequence that they were not made as a result of a 'legal obligation', as found by the court."

The statute is remedial in nature and should be liberally construed to give effect to its intention to protect an employee, *who has been denied payment of his wages when they were due*, from the payment of a heavier tax than would have been imposed if the employer had promptly met his obligations, * * * [Emphasis added.]

This remark was quoted with implied approval by the court in *Sedlack* v. *Commissioner, supra*.

It is apparent from such interpretations of the statute that to prevail here under subdivision (2) (A) petitioner must show liability of the Federal Government to pay him the remuneration during the years 1933 to 1942, inclusive, when the leave was accumulated. If no right existed at that time to receive the compensation there was nothing due subject to payment in a subsequent year.

During the years of accumulation of the leave there was no statutory provision to pay for it in a lump sum or otherwise, except as salary while absent from duty on annual leave with administrative authority. Such right to be off duty with pay for the period of the accumulated leave ceased upon the death of the employee with no enforceable right in his estate to payment for leave accumulated at his death. 24 Comp. Gen. 74. That situation continued until the approval on December 21, 1944, of Public Law 525, 78th Cong., 2d Sess., 58 Stat. 845, pursuant to the terms of which the remuneration in question was paid. 24 Comp. Gen. 48; S. Rept. No. 1300, 78th Cong., 2d Sess. (1944), and H. Rept. No. 1836, 78th Cong., 2d Sess. (1944), on Public Law 525.

Public Law 525, *supra*, provides to the extent material

That whenever any civilian * * * employee of the Federal Government * * * is separated from the service * * * he shall be paid compensation in a lump sum for all accumulated and current accrued annual or vacation leave to which he is entitled under existing law. Such lump-sum payment shall equal the compensation that such employee would have received had he remained in the service until the expiration of the period of such annual or vacation leave: * * * *Provided further*, That the lump-sum payment herein authorized shall not be regarded, except for purposes of taxation, as salary or compensation and not be subject to retirement deductions.

Another provision of the law provides that upon the death of a civilian employee a like amount shall be paid to a designated beneficiary or beneficiaries, and absent a designation, to the estate of the deceased employee.

That the purpose of Public Law 525, *supra*, to the extent material here, was merely to substitute a lump-sum method of payment for accumulated leave for the plan theretofore in effect is evident from the committee reports. Senate Report No. 1300, *supra*, contains a statement that

The purpose of the bill is to provide for a lump-sum payment for accumulated or accrued annual or vacation leave due to any officer or employee of the Gov-

ernment in the event of his separation from the service. Under existing law a separated employee can be compensated for accumulated and accrued leave only by being retained on the pay roll until he has received salary covered by the period of such leave.

House Report No. 1836, *supra*, is to the same effect.

Another provision of Public Law 525, *supra*, is that if an employee is reemployed in the Federal service under the same leave system prior to the expiration of the period of leave covered by lump-sum payment, he is required to refund the amount paid for the unexpired leave period, and is entitled to a leave credit in the employing agency for the leave represented by the refund. That requirement of the statute discloses that a lump-sum payment made to an employee qualified for reemployment in another agency of the Federal Government is not a payment for past services or otherwise without a qualification.

Since the enactment of Public Law 525, *supra*, an employee of the Federal Government has been compelled to take, when separated from the service, a lump-sum payment for his accumulated leave in lieu of salary while being carried on the payroll as a nominal employee at his current rate of compensation until the expiration of his accumulated leave period. S. Rept. No. 1300 and H. Rept. No. 1836, *supra*. The lump-sum payment is based upon the rate of salary payable to the employee on the date of his separation from the service. 24 Comp. Gen. 659. Obviously it was indeterminable prior to 1943 what petitioner's salary would be on retirement from service in 1951.

It is apparent from this discussion of the point that petitioner not only did not have at any time during the period of accumulation of the leave an agreement with his employer to pay the amount in question, but that there was no liability on the part of the Federal Government to pay the amount he received in 1951. He was not during such prior year denied payment for any compensation then due him; and, as a result, there was no amount owing, the payment of which could have been deferred. At all times after the accumulation of the leave until separation there existed the possibility that the credit would be wiped out by death or approved absence from duty with pay. It was not until petitioner's separation from the service that he became entitled to receive the amount in question, and consequently the payment then made was not remuneration "which would have been paid prior to the taxable year" or could have been paid at that time.

Assuming that petitioner has met the basic condition for the application of subsection (d) (2) (A), no relief can be granted unless one of the two "events" relied upon by him intervened as a cause for nonpayment in the prior years.

The substance of petitioner's contention on this point of his case is that, he having failed to take any part of his 90 days of accumulated

leave while an employee, there was no statutory authority to charge payment therefor to current appropriations prior to his separation from the service.

There was no authority to pay for the leave in a lump sum on separation prior to the enactment of Public Law 525, *supra*, in 1944, but no statute is cited under which payment could not have been made to satisfy the rights petitioner possessed during the period of accumulation of leave. There was no separation from the service until 1951 and, consequently, there was no obligation to pay petitioner for his accumulated leave until that time. The words "lack of funds appropriated to pay" in the statute clearly mean absence of money in an appropriation made to pay prescribed obligations. Absent authority to pay prior to separation, there was no need for funds, and in such a situation it cannot be said that there was lack of funds in an appropriation. Moreover, as already pointed out, the amount petitioner would be entitled to receive on separation was indeterminable until he left the service, and death of petitioner prior to December 21, 1944, while an employee, would have wiped out all of his rights to leave with pay.

The Comptroller General has said that the right to a lump-sum payment for accumulated leave does not "accrue" [3] until the last day of active service and that the appropriation for the fiscal year during which the employee is separated is the only one available for payment of the lump sum. 24 Comp. Gen. 578. See also Mim. 5817, Treasury Department.

As the only prescribed statutory event under which petitioner could qualify is "lack of funds appropriated," any other event under subsection (d) (2) (A) (iv) must be similar in nature to that event under regulations of the Commissioner. The regulations, section 29.107–3, provide that an event will be regarded as similar

only if the circumstances are unusual, if they are of the type specified therein, if they operate to defer payment of the remuneration for the services performed, and if payment, except for such circumstances, would have been made prior to the taxable year in which received or accrued. * * *

The only similarity suggested by petitioner on brief is lack of authority until August 31, 1951, to make a lump-sum payment and charge the amount thereof to the current appropriation, which he says operated to defer payment. To come within the statute the similarity must be based upon facts and circumstances prevailing in the prior years, which operated to defer payment until the taxable year.

---

[3] The term was obviously used in the sense that no employee has a right to receive a lump-sum payment for accumulated leave until separation from the service, and, therefore, that nothing was due or payable in a prior year or years. The implied effect of the ruling is that there was no appropriation in a prior year in which there could have been a lack of funds to pay.

Another, and the final, contention of petitioner is that the facts are within subsection (d) (2) (B). We cannot agree with him.

The accumulated leave resulted from services performed prior to the taxable year without taking time off with pay under the leave statutes then in force. The remuneration paid for such leave in a lump sum on separation from the service at the current rate of salary of the employee was pursuant to mandatory provisions of a statute and, therefore, was not "ordered, recommended, or approved by any Federal * * * agency." It had no retroactive characteristics and was made without regard to the salary of petitioner in any prior year. Concerning the manner of determining the amount of the lump-sum payment made to petitioner under Public Law 525, *supra*, the Comptroller General has said that "That provision serves only as a formula or rule for computing the amount of the lump-sum payment *under that statute* for annual or vacation leave of absence with pay (including Sundays and holidays)." 24 Comp. Gen. 526. Clearly, what petitioner received was not a retroactive salary increase in any amount.

Section 29.107-3 of Regulations 111 also provides with respect to section 107 (d) (2) that

For the purposes of this section the term "back pay" does not include * * * remuneration paid in the current year in accordance with the usual practice or custom of the employer even though received in respect of services performed in a prior year or years, * * *.

That this regulation reflects the intent of the statute is disclosed by a statement in House Report No. 1079, 78th Cong., 2d Sess. (1944), p. 44, that

Remuneration for personal services including pensions, retirement pay, bonuses or commissions, which are paid in the current year in accordance with the usual practice or custom of the employer, are not "back pay", even though such amounts are received in respect of services performed in a prior year (or prior years). * * *

The provisions of Public Law 525, *supra*, reflect the policy, and, therefore, the custom and practice, of the Federal Government respecting compensation for any accumulated leave of employees at the time of their separation from service.

The payment here was remuneration flowing from past services and thus comes within the regulation expressing the intent of Congress.

In conclusion we find no error in respondent's treatment of the income for tax purposes.

Reviewed by the Court.

*Decision will be entered for the respondent.*