RICHARD L. FELMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6107–65. Filed March 11, 1968.

*William L. Raby,* for the petitioner.
*Edward B. Simpson,* for the respondent.

600

OPINION

In substance, this case is controlled by our decision in *Leland W. Woolard*, 47 T.C. 274. The petitioner in that case in 1962 became entitled to and received readjustment pay in the amount of $12,300 under the provisions of Pub. L. 87–509, because he was involuntarily released from active duty as a Reserve officer in the U.S. Air Force on June 30, 1962, after completion of approximately 16 years of service. The only difference in principle between the facts in petitioner's case and

Woolard's case is that petitioner did *not* reenlist, whereas Woolard *did* reenlist. Because Woolard reenlisted, he contended that, when it came time for him to retire, he would be obligated to commence "repaying" out of his retirement pay $9,225 (75 percent) of the $12,300 received from the Air Force as readjustment pay in August 1962 and that, therefore, the $9,225 should be excluded from his taxable income. Woolard conceded that the remaining 25 percent of the $12,300, or $3,075, was taxable income in 1962. We held that the entire amount of $12,300 was taxable in 1962 and, in our opinion, we said:

> In these circumstances the proper tax treatment of these payments is to treat the readjustment pay as taxable income when received in 1962, and to tax only the reduced amounts of retirement pay in future years when and if paid to petitioner. In short, petitioner is taxable upon the amounts actually received in the years that he receives them. Whether the case be looked upon as one with a reduced retirement annuity in future years or one in which petitioner would be required to "repay" 75 percent of the readjustment pay out of that annuity, the result must be the same. For even if the latter view be taken, petitioner meanwhile had the unrestricted and uncontested right to use the entire readjustment pay for his own purposes, subject only to restoring a portion thereof out of retirement pay, if he should in fact retire in a later year. The mere fact that income received by a taxpayer may have to be returned at some later time does not deprive it of its character as taxable income when received. * * * Here the payment represented additional compensation for service in the Air Force. See Rev. Rul. 58–496, 1958–2 C.B. 20. It was income when received.

Petitioner, however, contends that the *Woolard* case was a pro se case, and that the question of the applicability of section 113, I.R.C. 1954,[1] and certain other questions were not raised by either party in the *Woolard* case.

Section 113 has no application here. The substance of this section first made its appearance in tax law as section 22(b)(14) of the 1939 Code added by section 109[2] of the Revenue Act of 1943.

The Mustering-Out Payment Act of 1944 (Act of Feb. 3, 1944, ch. 9, 58 Stat. 8), provided for payments to certain eligible persons ranging in amounts from $100 to $300. Section 5(a) of the Act stated in part: "Mustering-out payments due or to become due under this Act * * * shall be exempt from taxation * * *."

The courts have consistently held that income received by a taxpayer must be reported and is subject to tax in the absence of a specific

---

[1] SEC. 113. MUSTERING-OUT PAYMENTS FOR MEMBERS OF THE ARMED FORCES.

Gross income does not include amounts received during the taxable year as mustering-out payments with respect to service in the Armed Forces of the United States.

[2] SEC. 109. EXCLUSION FROM GROSS INCOME OF MUSTERING-OUT PAYMENTS FOR MILITARY AND NAVAL PERSONNEL.

Section 22(b) [of the Internal Revenue Code of 1939] (relating to exclusions from gross income) is amended by inserting at the end thereof the following:

"(14) Mustering-out Payments For Military and Naval Personnel.—Amounts received during the taxable year as mustering-out payments with respect to service in the military or naval forces of the United States."

exemption. *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426 (1955) ; *Gen. Investors Co.* v. *Commissioner*, 348 U.S. 434 (1955). In the latter case, the Supreme Court said:

As in *Glenshaw*, the taxpayer realized the money in question free of any restrictions as to use. The payments in controversy were neither capital contributions nor gifts. * * * There is no indication that Congress intended to exempt them from coverage. In accordance with the legislative design to reach all gain constitutionally taxable unless specifically excluded, we conclude that the petitioner is liable for the tax and the judgment is *Affirmed.*

In the various Acts providing for mustering-out payments, Congress has clearly and specifically exempted such payments from taxation. Section 1.113–1, Income Tax Regs. (1954 Code),[3] and section 39.22(b)(14)–1, Regs. 118 (1939 Code), did no more than confine mustering-out payment exemptions to those Acts providing for such payments wherein Congress had expressly made a designation. The clear fact is that Congress did not provide tax-exempt status for readjustment payments received under Pub. L. 87–509. See also *P. H. Marcum*, 10 B.T.A. 1192, 1194; I.T. 3790, 1946–1 C.B. 50; Rev. Rul. 58–496, 1958–2 C.B. 20; and *Marshall* v. *United States*, 77 F. Supp. 182 (E.D. La. 1948). In the latter case, the question was whether $2,116.67 received by the plaintiff under the provisions of the Naval Aviation Cadet Act of 1942 was excludable from gross income as a mustering-out payment under section 22(b)(14) of the 1939 Code. In holding for the Government, the court said, in part:

In the Mustering-Out Payment Act of 1944 it is expressly provided that the payments due or to become due under that act shall be exempt from taxation, but there is no such provision in the Naval Aviation Cadet Act of 1942. * * *

Accordingly, we hold that the $12,600 is not exempt from taxation under section 113, *supra.*

Petitioner cites the case of *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960), in support of his position that the payment of $12,600 was a gift, excludable from gross income under section 102(a),[4] I.R.C. 1954, in that it proceeded from a "detached and disinterested generosity" and "out of affection, respect, admiration, charity or like impulses." Utilizing the language of the *Duberstein* case, petitioner states that:

The parties seem to be in agreement that the payment made to petitioner was motivated by a "detached and disinterested generosity" and by "charity or like impulses."

---

[3] Sec. 1.113–1  Mustering-out payments for members of the Armed Forces.

For the purposes of the exclusion from gross income under section 113 of mustering-out payments with respect to service in the Armed Forces, mustering-out payments are payments made to any recipients pursuant to the provisions of 38 U.S.C. 2105 (formerly section 5 of the Mustering-out Payment Act of 1944 and section 505 of the Veterans' Readjustment Assistance Act of 1952).

[4] SEC. 102. GIFTS AND INHERITANCES.

(a) GENERAL RULE.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

We do not agree with petitioner that the payment was a gift. There is nothing in the House or Senate reports [5] to indicate that Congress intended the "readjustment payment" provided for in Pub. L. 87–509 as a "gift" as the term "gift" is used in section 102, *supra*. The "Committee Action" on H.R. 8773 was stated in S. Rept. No. 1096, in part, as **follows**:

(c) The Department recommended that persons who had received readjustment pay and subsequently qualified for retired pay under any provision of law be required to repay two-thirds of the readjustment payment before receiving retired pay. * * *

The committee recommendation is that for those persons who qualify for retired pay based on 20 years of active duty after having received readjustment payments, three-fourths of the readjustment payments must be repaid before the person begins the receipt of retired pay. *The reason for not requiring full repayment is that without considering the taxes paid on the readjustment pay a Reserve would be required to repay more than the net he had received as readjustment pay. Since the tax consequences for different Reserves would vary, depending upon their other income,* the committee decided that a three-fourths repayment is reasonable. [Emphasis supplied.]

It would seem from the emphasized portion of S. Rept. No. 1096, *supra*, that Congress really assumed that the readjustment payment being provided for would be taxable.

We hold that the readjustment payment was not a gift. Cf. *P. H. Marcum, supra*.

In his brief, petitioner presents two alternative contentions: (1) That if the payment involved is held to constitute taxable income, it should be taxed as capital gain and not as ordinary income, and (2) that if the payment involved is held to constitute ordinary income, subject to tax, and not capital gain, then it should be taxed, subject to the provisions of section 1303, I.R.C. 1954, as that section existed in 1963.

We see no merit in either alternative contention. Under (1) petitioner argues that petitioner's expectation of retirement benefits from the Air Force was a substantial asset, valued by him at approximately $84,000 and that his exchange of that asset for a cash settlement of $12,600 was a transaction involving a capital asset. The fact is petitioner had no rights to retirement pay until he had served 20 years

[5] H. Rept. No. 1007, 87th Cong., 1st Sess. (Aug. 22, 1961), accompanying H.R. 8773 and S. Rept. No. 1096 (Sept. 20, 1961).

of active duty. He had only served a little less than 15 years. The parties stipulated:

9. Petitioner, as of the date of this Stipulation of Facts, has never re-enlisted in the Armed Forces of the United States and is not entitled to retirement pay.

Accordingly, we hold that petitioner's capital gains argument is without merit.

Under alternative contention (2), the material provisions of section 1303, as it existed in 1963 and *prior* to the amendments made in the Revenue Act of 1964, Pub. L. 88–272 (Feb. 26, 1964), H.R. 8363, 78 Stat. 19, 105–112, are in the margin.[6]

The readjustment payment here in question was not "back pay" as that term is defined in section 1303(b). Petitioner had no right to receive the readjustment payment until he was involuntarily released from the services. In this regard, see Rev. Rul 58–496, *supra*, cited with approval in *Leland W. Woolard, supra*, holding that lump-sum severance pay received under the Officers Personnel Act of 1947, 10 U.S.C. chs. 335, 573, 835, does not constitute "back pay" under section 1303. Furthermore, the readjustment payment was pursuant to the mandatory provisions of a statute and, therefore, was not "ordered, recommended, or approved" by any Federal agency as required by section 1303(b), *supra*. Cf. *Francis T. Donahoe*, 22 T.C. 1276.

Accordingly, we hold that petitioner's "back pay" argument is also without merit; and that the respondent did not err in increasing petitioner's taxable income, as reported, by the sum of $12,600 received by him during 1963 as readjustment pay pursuant to Pub. L. 87–509.

*Decision will be entered for the respondent.*

---

[6] SEC. 1303. INCOME FROM BACK PAY.

(a) LIMITATION ON TAX.—If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 percent of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Secretary or his delegate.

(b) DEFINITION OF BACK PAY.—For purposes of this section, the term "back pay" means amounts includible in gross income under this subtitle which are one of the following—

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(2) Wages or salaries which are received or accrued during the taxable year by an employee for services performed before the taxable year for his employer and which constitute retroactive wage or salary increases ordered, recommended, or approved by any Federal or State agency, and made retroactive to any period before the taxable year.