William F. RICKETTS, Jr. and Jeanne G. Ricketts

v.

The UNITED STATES.

No. 396–66.

United States Court of Claims.

Jan. 24, 1969.

William F. Ricketts, Jr., pro se.

Norman J. Hoffman, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

LARAMORE, Judge.

This is a suit for refund of Federal income taxes paid for the year 1962 in the amount of $3,471.44.

The facts have been stipulated and, in pertinent part, are as follows: Taxpayer,[1] a Reserve Air Force officer, was involuntarily released from active duty on June 30, 1962. As such, he was entitled to readjustment pay under section 265 of the Armed Forces Reserve Act of 1952, 66 Stat. 481, as amended by the Act of July 9, 1956, 70 Stat. 517 (50 U.S.C. § 1016). Pursuant to these provisions, taxpayer received readjustment pay computed under the statutory formula of one-half of his monthly base pay ($525) for each year of active duty (16) or $4,200. He was also entitled to and had previously received $200 mustering-out pay determined in accordance with section 2102(a) (2) of the Mustering-Out Payment Act of 1944, 58 Stat. 8 (38 U.S.C. § 2102(a) (2)). This sum was deducted from the readjustment pay and taxpayer was paid $4,000, less withholding taxes, on June 29, 1962.

On June 28, 1962, Public Law 87–509, 76 Stat. 120, was enacted, further amending section 265, supra.[2] Pursuant to

---

1. Actually plaintiffs in this case are husband and wife. For convenience we will refer to them as "taxpayer" or "plaintiff."

2. The statute, as amended, reads in part as follows:

"* * * section 265 of the Armed Forces Reserve Act of 1952, as amended (50 U.S.C. [§] 1016), is amended as follows:

"(1) Subsection (a) is amended to read as follows:

"(a) A member of a reserve component who is involuntarily released from active duty after the date of enactment of this amended subsection and after having completed immediately prior to such release at least five years of continuous active duty, * * * is entitled to a lump-sum readjustment payment computed on the basis of two months' basic pay in the grade in which he is serving at the time of release from active duty for each year of active service * * *. * * * No person covered by this subsection may be paid a total of more than two years' basic pay in the grade in which he is serving at the time of release or $15,000, whichever is the lesser. There shall be deducted from any lump-sum readjustment payment under this subsection any mustering-out pay received under the Mustering-Out Payment Act of 1944, The Veterans' Readjustment Assistance Act of 1952, or Chapter 43 of title 38, United States Code."

* * * * *

"(4) Subsection (c) is amended to read as follows:

"(c) A member of a reserve component who has received a readjustment payment under this section after the date of enactment of this amended subsection and who qualifies for retired pay under any provision of title 10 or title 14, United States Code, that authorizes his retirement upon completion of 20 years of active service, may receive that pay subject to the immediate deduction from that pay of an amount equal to 75 percent of the amount

this amendment, taxpayer was entitled to increased readjustment pay computed under a new statutory formula of two months' base pay for each year of active duty, not to exceed for his grade $12,600, less mustering-out pay previously received. Accordingly, on August 8, 1962, taxpayer received additional readjustment pay in the amount of $8,400, i. e., $12,600 minus $200 mustering-out pay, minus $4,000 readjustment pay previously paid, less additional withholdings. Taxpayer and his wife reported $12,400 as ordinary income on their 1962 Federal income tax return.

In July 1962, taxpayer re-enlisted in the Air Force as a sergeant and served therein until July 1, 1967, when he was discharged. On that date, having served 20 years on active duty, he was eligible for and received retirement pay pursuant to the provisions of Title 10 of the U.S. Code (10 U.S.C. § 8889). Pursuant to section 265(c) of the Armed Forces Reserve Act, as amended by Public Law 87–509, supra, only 75 percent of the readjustment pay he previously received was deducted from his retirement pay.

Taxpayer filed a timely claim for refund of the taxes paid on the $12,400 reported as ordinary income. An addendum to the original claim for refund was filed on or before March 9, 1966, setting forth an additional alternative ground under which the refund was claimed.

On May 24, 1966, a statutory notice of disallowance of plaintiff's claim for refund was issued by the District Director of Internal Revenue at Phoenix, Arizona. This suit resulted.

Plaintiff's argument is threefold: (1) The payment of readjustment pay is entirely exempt from income taxation;[3] (2) if not exempt, the income is eligible for the "spreading" treatment provided in section 1303 of the Internal Revenue

Code[4] as it existed in 1962; and (3) if not exempt, it should be taxable as capital gains.

## I.

Plaintiff's first argument is in two parts. Either the payments are not income under section 61(a) (1), or alternatively, they are mustering-out pay and, therefore, excluded from gross income by section 113. We reject both contentions.

Plaintiff argues that these sums are not severance payments for past services (which would be income under section 61(a) (1)) but are payments made to promote the "general welfare" by enabling servicemen to readjust to civilian life. Plaintiff compares these payments to social security and unemployment insurance payments which are similarly made for the general welfare and excluded from gross income.

Section 61(a) (1) defines gross income as " * * * all income from whatever source derived, including * * * the following items: [1] Compensation for services, including fees, commissions and similar items * * *." Treasury Regulation § 1.61–2(a) (1) provides: "Wages, salaries, * * * termination or severance pay, * * * pay of persons in the military * * *, are income to the recipients unless excluded by law."

■ This broad definition clearly includes these payments. We do not believe that this point deserves an extended discussion. Plaintiff would have us hold these readjustment payments non-taxable because they are made, broadly speaking, for the public welfare. In order to comply, we would be forced to ignore the fact that they are not specifically made non-taxable by applicable statutes. We recognize that these sums are premised on plaintiff's employee relationship while

---

of the readjustment payment without interest." (*The statute was repealed by* Pub.L. 89–718, § 75(4), November 2, 1966, 80 stat. 1124.)

3. In this argument plaintiff seems to say, in addition to other arguments, that pay-

ment of the readjustment pay was an outright gift by the government and not taxable.

4. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, 68A Stat. 3.

in the service and are designed to aid him when he is involuntarily separated. There is, however, no statutory directive which makes these sums non-taxable.

Neither of plaintiff's alternative positions is novel. Two recent decisions of the Tax Court are very similar to this case. Both held that lump-sum payments pursuant to Public Law 87–509 were includible in income and the *Felman* decision held these sums not excludible under section 113 as mustering-out pay. Leland W. Woolard, 47 T.C. 274 (1966); Richard L. Felman, 49 T.C. 599 (1968).

In the *Woolard* case, the petitioner received $4,200 computed under section 265 on the basis of 16 years of active duty service. (This is the same computation made for plaintiff.) After the enactment of Public Law 87–509, Woolard received a total of $12,300. It was clear to the Tax Court, and we find, that the Senate Committee which considered the amendment understood that the readjustment pay would be subject to tax. The statute, as amended, provides for the possible repayment of readjustment pay by a Reserve officer who might, several years subsequent to receiving a lump-sum readjustment payment, retire after 20 years of service. His retirement pay must be reduced by an amount equal to 75 percent of his readjustment pay. This prevents dual crediting for both readjustment and retirement pay. The court found: "And the reason for limiting the reduction in the retirement pay to only 75 percent of the readjustment pay also appears in the same Senate committee report [S.Rept. No. 1096, 87th Cong., 1st Sess.], namely, that the remaining 25 percent would in general be utilized *to pay taxes upon the readjustment pay.* * * * It is thus clear that the Senate committee understood that the readjustment pay would be subject to tax, * * *." (47 T.C. at 277; emphasis added.)

Plaintiff next argues that even if these amounts are income they are excludible under section 113 as mustering-out pay. Section 113 provides:

Gross income does not include amounts received during the taxable year as mustering-out payments with respect to service in the Armed Forces of the United States.

Mustering-out pay is defined in the applicable regulation, Treasury Regulation 1.113–1, as payments made to servicemen pursuant to the provisions of 38 U.S.C. § 2105 (formerly section 5 of the Mustering-Out Payment Act of 1944 and section 505 of the Veterans' Readjustment Assistance Act of 1952). See also, Marshall v. United States, 77 F.Supp. 182 (E.D.La.1948).

Plaintiff argues that section 113 was first enacted in 1943 before either of the above mustering-out pay statutes was enacted. Therefore, he concludes, the exclusion provided by section 113 is based on a broader, more general definition of mustering-out pay, *i. e.,* payments made to a serviceman at the time of his discharge, if they are not for past services. These are not payments for past services, continues plaintiff, because the legislative history clearly states that these are not severance payments for past services (H.Rept. No. 1007, 87th Cong., 1st Sess., p. 5).

This precise issue was before the Tax Court in the *Felman* case. It found, and we now hold, that section 113 is not applicable to payments made pursuant to Public Law 87–509.

In Richard L. Felman, supra, the petitioner was involuntarily released from service in 1963 after having served a total of 14 years, 8 months, and 29 days on active duty. Plaintiff received a lump-sum payment of $12,000 in 1963 pursuant to the provisions of Public Law 87–509. The court rejected plaintiff's argument that section 113 was applicable to the entire payment and said:

In the various Acts providing for mustering-out payments, Congress has clearly and specifically exempted such payments from taxation. Section 1.113–1, Income Tax Regs. (1954 Code), * * * did no more than confine mustering-out payment exemp-

tions to those Acts providing for such payments wherein Congress had expressly made a designation. The clear fact is that Congress did not provide tax-exempt status for readjustment payments received under Pub.L. 87–509. * * * [49 T.C. at 603; footnote omitted]

■ As a general rule, income is subject to taxation unless there is a specific exemption or exclusion provided by statute. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). Section 5(a) of the Mustering-Out Payment Act (38 U.S.C. § 2105 (a)) provides: "Mustering-out payments due or to become due under this chapter * * * shall be exempt from taxation * * *." The statute which grants mustering-out pay also makes these sums excludible from income. Although the original section 113 was enacted prior to the enactment of the relevant mustering-out pay statutes, section 113 was reenacted in 1954, without change. The regulations thereunder refer specifically to payments pursuant to two "mustering-out pay" statutes. Congress, in enacting Public Law 87–509, did not provide that these sums were either mustering-out pay or that they are excludible as if they were mustering-out payments. We note that mustering-out pay is a specific sum which does not vary with the serviceman's length of service or rank as do readjustment payments. In the absence of a specific exemption we find these sums taxable, and we also conclude that the $200 plaintiff received pursuant to this statute is the only nontaxable mustering-out pay.

There is one other brief argument presented in connection with plaintiff's first contention. The petitioner in the *Felman* case argued, and plaintiff now argues, that these readjustment payments are excludible under section 102 (a) as gifts because they are made out of affection and are based on a detached and disinterested generosity, citing as his authority, Commissioner v. Duberstein,

363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

We find, as did the Tax Court in the *Felman* case, that there is nothing in the pertinent House or Senate Reports to indicate that these payments are gifts. Instead, the Senate Report contains the following statement made in connection with a discussion of the arbitrary choice of a 75 percent deduction for readjustment payments made prior to the serviceman's retirement:

"* * * Since the *tax consequences* for different reservists would vary depending upon their other income, the committee decided that a three-fourths repayment is reasonable." [S.Rept. No. 1096, supra, p. 6; emphasis added]

■ It is obvious that Congress understood these payments to be taxable and provided some tax relief by requiring a 75 percent repayment rather than a full 100 percent repayment. There is no basis whatsoever either in the statute or in the applicable legislative history for concluding that these payments were gifts. Accordingly, we find that these payments are income to the serviceman in the year of receipt and are not excludible under section 113.

II.

As his second major contention, plaintiff maintains that the payments were, in actuality, back pay and, therefore, they are subject to the "spreading" provisions of section 1303(a), 68A Stat. 335, as amended, 75 Stat. 625 (as it existed in 1962). It provides, in part:

SEC. 1303. INCOME FROM BACK PAY.

(a) *Limitation on Tax.*—If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 percent of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the in-

creases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Secretary or his delegate.

(b) *Definition of Back Pay.*—For purposes of this section, the term "back pay" means amounts includible in gross income under this subtitle which are one of the following—

    \*     \*     \*     \*     \*     \*

(2) Wages or salaries which are received or accrued during the taxable year by an employee for services performed before the taxable year for his employer and which constitute retroactive wage or salary increases ordered, recommended, or approved by any Federal or State agency, and made retroactive to any period before the taxable year.

Similarly, Treasury Regulation 1.1303 a–1(b) (2) defines back pay as "retroactive wage or salary increases received or accrued during a taxable year by an employee. for services performed in a prior taxable year which have been ordered, recommended, or approved by any Federal or State agency * * * and United States and State Courts." Revenue Ruling 60–9, 1960–1 Cum.Bull., p. 315, also relied on by plaintiff, includes additional longevity payments in the definition of back pay subject to section 1303(a), if they are made in accordance with the Act of March 6, 1946, 60 Stat. 32, and the Career Compensation Act of 1949.

Plaintiff argues that the Air Force is a "federal agency" within the above provisions which, by virtue of the changes made by Public Law 87–509, was required to make an increased lump-sum payment (at least to the extent of the additional $8,400 paid plaintiff after the enactment of the above statute). Therefore, plaintiff argues that he should be permitted to spread these increased "salary or wage" payments over the period 1945–1962, as permitted by sections 1301–1303.

██ We again refer to the Tax Court decision in the *Felman* case, where this same issue was considered. That court rejected the identical argument and concluded that these were not "wages or salaries" paid to an employee but were readjustment payments made after the serviceman had been involuntarily released. We agree with this analysis.

Lump-sum severance payments made to Regular officers (rather than Reserve officers) have been held *not* to be back pay within section 1303. (Rev.Rul. 58–496, 1958–2 Cum.Bull., p. 20.) See also, I.T. 3790, 1946–1 Cum.Bull., p. 50. Plaintiff has not shown any reason why Reserve officers should be given tax advantages not given to Regular officers. In our view, there is no basis to differentiate between lump-sum payments to Regular officers who are involuntarily released and comparable payments to Reserve officers similarly released. In addition, these readjustment payments are not made pursuant to an order, recommendation or the approval of an agency (as required by section 1303). They are made pursuant to a statute.

██ In general, the term "back pay" includes the payment of additional compensation for past services which the serviceman should have received prior to his separation based on a prior agreement by, or a legal obligation of the service to make such payments. (See Treas.Reg. § 1.1303a–1(b).) Plaintiff does not claim back pay for his past service owed to him at the time of his separation. We find that these sums were not back pay within section 1303.

Revenue Ruling 60–9 also relied on by plaintiff, is inapplicable. It concerns an increase in *longevity pay* which was owed to previously separated servicemen when the definition of creditable service was changed. We are involved with lump-sum readjustment pay not compensation for past services (with which the Ruling is concerned).

## III.

As his final argument, plaintiff claims that even if these payments are held taxable income, they should be taxed as capital gains and not as ordinary income. He relies on sections 402(a) (2) and 403(a) (2)[5] which make capital gains rates applicable to certain distributions made to an employee when he terminates his employment or dies.

Plaintiff looks to 10 U.S.C. § 8889 which provides retirement benefits for officers who retire after 20 years in service and he, in effect, equates the military and civil service retirement systems. Therefore, he argues that I.T. 4102, 1952–2 Cum.Bull., p. 173 is applicable and plaintiff's payments should be taxed at capital gains rates. I.T. 4102 states: "that portion of a lump-sum payment received by a Federal *civil-service* employee or his beneficiary, on account of the employee's separation from the service, * * * is considered, * * * as gain from the sale or exchange of a capital asset held for more than 6 months." [Emphasis added; at p. 174.] We find that neither the cited sections of the Internal Revenue Code nor I.T. 4102 is applicable.

▮▮▮ Basically, sections 402 and 403 apply capital gains rates to specific distributions made from qualifying trusts or qualifying employee annuity plans. These provisions are clearly not applicable to the readjustment payments made to plaintiff pursuant to Public Law 87–509. In any event, this case does not involve retirement payments. Plaintiff was involuntarily separated and the money paid him was a lump-sum readjustment payment, in no sense comparable to longevity retirement benefits (to which plaintiff was clearly not entitled, having served only 15 years and 6 months).

Plaintiff's analogy to the Civil Service retirement system (to which I.T. 4102 is directed) is equally without merit. The military and civilian systems of retirement are not involved in this case because this payment is not, we repeat, retirement pay. Moreover, the structure of the civilian system is based on employee contributions through withholding of a percentage of salary. That amount is credited to the retirement fund together with a similar contribution by the agency. The Secretary of the Treasury is directed to invest these funds in interest-bearing securities of the United States. (See 5 U.S.C. §§ 2251–2268.)

The Civil Service Retirement and Disability Fund has been held to qualify under section 402 and, therefore, payments pursuant to that system are given section 403 and section 404 treatment. This is totally inapplicable to our case. A separated serviceman receives readjustment pay or severance pay and a civilian does not. Instead, the separated civilian employee receives a refund of the money he has contributed to the retirement fund (which has been taxed in the year of contribution). Readjustment pay, however, is a statutory sum granted to a service man to aid his readjustment to civilian life. It is not retirement income of any kind. We note that the Tax Court in *Richard L. Felman,* supra,

---

5. Section 402(a) (2) provides:

"(2) *Capital gains treatment for certain distributions.*—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee [*sic*] on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribu-

tion, to the extent exceeding the amounts contributed by the employee (determined by applying section 72(f)), which employee contributions shall be reduced by any amounts theretofore distributed to him which were not includible in gross income, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * *."

Section 403(a) (2) gives capital gains treatment to certain amounts which otherwise qualify under sections 403 and 404.

also considered and rejected a similar capital gains argument.

In summary, we conclude that readjustment payments made pursuant to section 265, as amended by Public Law 87–509, are includible in gross income, not excludible by section 113, not gifts under section 102, not subject to the "spreading" provisions of section 1303, and finally, not subject to taxation as capital gains.