DAVID and LORAINE GOODMAN, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goodman v. Commissioner
Docket No. 10797-78.
United States Tax Court
T.C. Memo 1980-122; 1980 Tax Ct. Memo LEXIS 461; 40 T.C.M. (CCH) 174; T.C.M. (RIA) 80122; April 17, 1980, Filed David Goodman, pro se. Rogelio A. Villageliu, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in income tax in the amount of $1,405.91 for the taxable year 1976. The issues for decision are: (1) Whether respondent has failed to comply with the restrictions on examination set forth in sec. 7605(b); [1]
(2) Whether the payment petitioner Loraine Goodman received upon termination of her employment *463 is entitled to capital gain treatment; (3) Whether petitioners are entitled to deduct amounts paid for automobile repairs as ordinary and necessary business expenses; (4) Whether petitioners are entitled to deduct legal fees as ordinary and necessary business expenses; and (5) Whether petitioners are entitled to deduct amounts claimed as medical expenses under section 213. [2]
FINDINGS OF FACT David Goodman and Loraine Goodman were husband and wife residing in Milwaukee, Wisconsin, at the time the petition in this case was filed. During approximately the first four months of 1976, petitioner, Loraine Goodman, a registered nurse, worked as a salaried employee of The American Can Company ("American Can"). Mrs. Goodman had been employed by American Can for over seven years. American Can had recently closed several of its plants. As a consequence, its work force contained an overabundance of salaried employees. In order to avoid laying off the excess number of salaried employees, American Can established an early retirement program specifically for the *464 purpose of reducing the work force. Under this special one-time program, salaried employees over 55 years in age were entitled to receive eight full months of their current weekly salary [3] upon retirement. The idea behind the program was to provide salaried employees who were close to retirement age an incentive to retire early. This allowance was not paid from a retirement fund and was in no way dependent on any amounts an employee had contributed to any type of retirement fund. Employees who elected to receive the early retirement allowance still retained their rights to those benefits which had accrued to them under American Can's pension plan. Mrs. Goodman elected to receive the special retirement allowance and consequently terminated her employment with American Can. The total amount of her payment, which she received in a lump sum, was $9,088. [4] Apart from that special allowance, Mrs. Goodman still receives a monthly pension of approximately $73.33 from American Can. Petitioners reported the $9,088 payment on their 1976 return as a capital gain. *465 Subsequent to her retirement from American Can, Mrs. Goodman worked during 1976 for the Blue Cross of Wisconsin, the United States Post Office and the Wisconsin Bridge and Iron Works. She performed her services for each of these employers as an independent contractor. Essentially, she would fill in for those nurses who were regularly employed when they were either on vacation or ill.
In order to get to these various locations from home, Mrs. Goodman drove her car, a 1967 Chrysler. On occasion, she would work two different shifts for two different employers, driving from one location to the other without going home.
The 1967 Chrysler was also used by petitioners' six children. Mrs. Goodman did not keep any type of log or record separating the personal driving from the use of the car in connection with her getting to and from work. During 1976 petitioners incurred various expenses for repairing the 1967 Chrysler. On their 1976 tax return, petitioners claimed deductions in the amount of $297.00 for these items as ordinary and necessary business expenses. Petitioners claimed a duction *466 for legal fees in the amount of $550.00 on their 1976 return. Also on their 1976 return, petitioners claimed that they had incurred $2,044 in medical expenses. In addition, petitioners reported that they spent $371.00 for medical insurance. Petitioners timely filed their income tax return for 1976 which showed an income tax liability of $58.76.As a result of withholding and a credit for the prior year totaling $2,844.24, petitioners claimed an overpayment in the amount of $2,785.48. On their return petitioners elected to apply $1,000 of the claimed overpayment to their 1977 estimated income tax liability and, accordingly, claimed that they were entitled to a refund in the amount of $1,785,48.
In processing petitioners' 1976 tax return, respondent, by a letter dated February 23, 1977, from the Internal Revenue Service Center in Kansas City, Missouri, requested that petitioners submit Form W-2 (Wage and Tax Statement), Form W-2P (Statement for Recipients of Annuities, Pensions or Retired Pay) or an explanation to support $1,817.64 of the $2,544.24 they claimed on their return as the total Federal income tax withheld. In response to this request, petitioners sent a check stub *467 from American Can which showed that the $1,817.64 had been withheld in connection with $9,088.21 in "gross pay" received from American Can. Petitioners had also submitted an unrelated American Can Pension Trust W-2P form for 1976. Petitioners' response to the February 23rd letter was received by respondent on March 1, 1977. Petitioners did not send any other correspondence to the Kansas City Service Center with regard to their 1976 income tax liability following this response. On March 21, 1977, the code number 420 (audit indicator) was placed next to petitioners' account to indicate that an examination was to be conducted. On March 28, 1977, petitioners' declared income tax liability of $58.76 was corrected to $45.76 as petitioners had failed to apply a $13.00 investment credit against their tax liability. Also on March 28, 1977, the code number 576 (unallowable tax hold) was placed on petitioners' account in order to "freeze" $802.00 of their claimed refund. The $802.00 figure represents the increased tax liability which resulted from denying capital gain treatment to the $9,088.00 American Can payment. As a consequence, petitioners received a refund check in the amount *468 of only $966.48. Subsequently, the examination of petitioners' 1976 taxable year was referred from the Kansas City Service Center to the District Director's Office, District of Wisconsin. In conjunction with the transfer of petitioners' case to the district Director's Office, the code number 577 (reversed unallowable hold) was placed next to petitioners' account. This code number authorized the release of the $802.00 refund which had been previously withheld. According to the Internal Revenue Manual which was then in effect, [5] the practice of releasing a previously frozen refund once a case had been transferred to the District Director for completion of the examination was routine. Petitioners received a check for this amount sometime in early May of 1977. Sometime during January of 1978, Patricia Shaw, a tax auditor in the District Director's Office in Milwaukee, was assigned to examine petitioners' 1976 tax return. She sent petitioners an appointment letter requesting that they come to her office to discuss the questionable items on their return. Petitioners did not comply with this request. Instead, petitioner David Goodman called *469 Shaw and stated that he had already been audited twice for 1976 and that coming in for the appointment would constitute a third audit. Upon a subsequent examination of respondent's microfilm records, Shaw determined that petitioners had not been previously audited. Thus, she sent petitioners another appointment letter which they failed to respond to. After speaking with her supervisor, Shaw then issued an auditor's report which recommended various changes to petitioners' reported income tax liability. This report formed the basis for issuance of respondent's notice of deficiency for 1976. A notice of deficiency containing the adjustments to petitioners' reported income tax liability was issued on July 12, 1978. Prior to its issuance, petitioners never appeared to have their 1976 return examined at the office of the District Director for the District of Wisconsin, nor did they meet with any Internal Revenue agent, officer, auditor nor any other employee or agent of the Internal Revenue Service with regard to their income tax liability for 1976.
OPINION Petitioners argue that respondent violated the restrictions on examination of a taxpayer contained in section 7605(b). *470 That section provides: (b) RESTRICTIONS ON EXAMINATION OF TAXPAYER.-- No taxpayer should be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary. Petitioners assert that the statutory prohibition against additional inspections was violated in that respondent conducted three separate examinations or audits of their 1976 taxable year. According to petitioners, these three examinations consisted of: (1) a pre-refund examination by the Internal Revenue Service Center in Kansas City which corrected petitioners' failure to apply the $13.00 investment credit against their tax liability and which culminated in freezing $802.00 of their claimed refund; (2) the subsequent release of the freeze which had been placed on the $802.00; and (3) the correspondence between Agent Shaw and petitioners concerning their 1976 tax return. We find this argument totally lacking in merit. *471 Quite simply, there has been no inspection of petitioners' books of account within the meaning of section 7605(b). After petitioners submitted their 1976 tax return, the Audit Division for the Kansas City Service Center merely requested that petitioners send them either Form W-2, Form W-2P or an explanation to support the entry for amount of federal tax withheld. Petitioners responded by submitting a check stub and Form W-2P. A review of Form 1040 and accompanying schedules does not constitute an inspection of a taxpayer's books of account. Benjamin v. Commissioner, 66 T.C. 1084 (1976), aff'd. on other issues 592 F. 2d 1259 (5th Cir. 1979); Geurkunk v. United States, 354 F. 2d 629 (7th Cir. 1965). The same is true for respondent's other actions which petitioners argue comprised second and third examinations. Moreover, even assuming arguendo that these activities were additional examinations of petitioners' books of account their cause would still not be aided. *472 Section 7605(b) does not prevent further inspections of a taxpayer's records when such are part of a continuing investigation or audit. United States v. Moriarty, 311 F. Supp. 144 (E.D. Wis. 1969), aff'd. 435 F. 2d 347 (7th Cir. 1970). [6] There has been no proof adduced which would demonstrate that a completed audit was conducted prior to Shaw's issuance of an audit report. Accordingly, we hold that respondent did not violate the restrictions on examination contained in section 7605(b). The next issue for our consideration relates to the characterization of the early retirement allowance which Mrs. Goodman received from American Can. Petitioners argue this lump sum payment is entitled to capital gain treatment since Mrs. Goodman's election to receive this amount constituted an exchange of a capital asset. We do not agree. Petitioners have not demonstrated that Mrs. Goodman sold or exchanged anything in the nature of a capital asset within the meaning of sections 1221 and 1222. In Felman v. Commissioner, 49 T.C. 599 (1968), the taxpayer, a member *473 of the armed forces, received a readjustment payment upon his separation from the service. The taxpayer maintained that his expectation of retirement benefits was a capital asset which he had exchanged for a lump sum payment. In rejecting that argument, this Court noted that the taxpayer's mere expectancy was not a captial asset. Felman, supra, at 604-05. We find that Felman is indistinguishable from the instant case and, accordingly, hold that Mrs. Goodman neither sold nor exchanged a capital asset.
It is also evident that poetitioners were not entitled to report this payment as a lump sum distribution from a qualified pension, profit sharing or stock bonus plan under section 402(a)(2). [7] The special retirement allowance clearly did not qualify for capital gain treatment under this provision as the payment from American Can was not from a qualified pension, profit sharing or stock bonus plan within the meaning of sections 401 and 402. Mrs. Goodman reserved every pension right she was entitled to after she elected to receive the $9,088.21 payment from American Can. As a result, respondent's determination that the early retirement allowance is reportable as ordinary *474 income must be sustained. Next we consider whether petitioners are entitled to deduct expenses paid for repair of Mrs. Goodman's 1967 Chrysler.At trial, respondent conceded that petitioners paid $372.06 during 1976 for repairs. Petitioners have introduced three checks to support an additional $150.22 in auto repair expenses. Since petitioners have failed to introduce the bills to which these checks relate, they have failed to prove that these checks do not fall within the amount which respondent has already conceded. Consequently, for purposes of the amount of the deduction at issue, the $150.22 is not added to the $372.06 which respondent has conceded. Respondent *475 maintains, however, that the auto repairs represent nondeductible commuting expenses of Mrs. Goodman or other personal expenses. It is true that when her sons were not using the car, Mrs. Goodman used it mainly to travel to and from work, either at the Blue Cross of Wisconsin, the United States Post Office or the Wisconsin Bridge and Iron Works. To the extent that these repair expenses are attributable to commiting or other personal use of the car, then they are nondeductible. Commissioner v. Flowers, 326 U.S. 465 (1946), reh. denied, 326 U.S. 812 (1946); sections 1.162-2(e), 1.262-1(b)(5), Income Tax Regs. However, Mrs. Goodman also testified that she would occasionally use her car to travel from one job location to another on the same day. To the extent that petitioner's car was so utilized, then the cost of repairs are deductible. Steinhort v. Commissioner, 335 F. 2d 496 (5th Cir. 1964), aff'g. and remand'g. a Memorandum Opinion of this Court; Heuer v. Commissioner, 32 T.C. 947 (1959), aff'd, 283 F. 2d 865 (5th Cir. 1960). *476 [8]
We find that Mrs. Goodman's testimony in this regard was straightforward and credible. Although we are mindful that a log indicating the specific business use of the car would have been better evidence, we are convinced that petitioners have met their burden of proof in establishing that a portion of the claimed expenses are attributable to such business use of the car. Cohan v. Commissioner, 39 F. 2d 540 (2d Cir. 1930). Accordingly, we hold that petitioners are entitled to a deduction in the amount of $150 for repairs to the 1967 Chrysler. Petitioners also claimed a business expense deduction of $550.00 for legal fees on their 1976 return. At trial petitioners failed to present any evidence concerning payment or the nature of these purported legal fees. Respondent's determination as to the nondeductibility of amounts claimed for these fees must be sustained since petitioners have failed to satisfy their burden of proof in this regard. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), *477 Tax Court Rules of Practice and Procedure.
Finally, we address whether petitioners are entitled to deduct amounts claimed as payment for medical expenses and insurance. With respect to their medical expenses for 1976, respondent conceded at trial that petitioners paid $1,773.30 and the parties agreed that petitioners received reimbursements for such in the amount of $750.00. Petitioners claim that they paid $613.00 in additional medical expenses. However, we do not believe that the evidence which petitioners have introduced substantiates their payment during 1976 for this additional amount. Their supporting evidence consisted of certain dental bills which either failed to show the year to which they pertained or lacked proof of their payment. Consequently, we hold that petitioners paid $1,573.30 in medical expenses during 1976 and also received $750.00 in reimbursements thereof. In addition, respondent has also conceded on brief that petitioners paid $256.00 for medical insurance during 1976. Petitioners introduced two cancelled checks and a withholding statement to prove that they paid an additional $172.40 for medical insurance. Again, we are forced to limit the appropriate *478 amount to the figure conceded by respondent as petitioners have not satisfied their burden of proving that they are entitled to an amount greater than that conceded by respondent. We hold that petitioners paid $256.00 for medical insurance during 1976. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Respondent has conceded that petitioners are entitled to a deduction for state taxes in the amount of $769.00.↩
3. The formula for determining the amount of the special retirement allowance was: weekly base salary X 52/12 X 8.↩
4. This amount represents eight months of pay based on a weekly salarly of $262.16.↩
5. See I.R.M. 4(13) 21 (9-7-76).↩
6. See also Showalter v. Commissioner, T.C. Memo. 1974-40↩.
7. Section 402(a)(2) provides in pertinent part: CAPITAL GAINS TREATMENT FOR PORTION OF LUMP SUM DISTRIBUTION.--In the case of employee trust described in section 401(a), which is exempt from tax under section 501(a), so much of the total taxable amount (as defined in subparagraph (D) of subsection (e)(4)) of a lump sum distribution * * * shall be treated as a gain from the sale or exchange of a capital asset * * *.↩
8. The Commissioner has agreed that expenses between two places of employment are deductible. See Rev. Rul. 55-109, 1955-1 C.B. 261↩.